

**IN THE COURT OF CRIMINAL APPEALS
OF TEXAS**

**NO. AP-75,748**

**EX PARTE JOSE ANGEL MORENO, Applicant**

**ON APPLICATION FOR A WRIT OF HABEAS CORPUS
IN CAUSE NO. 1986-CR1042 FROM THE
227TH DISTRICT COURT OF BEXAR COUNTY**

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J., filed a concurring opinion. Meyers and HERVEY, JJ., did not participate.

## O P I N I O N

In this cause, we take the unusual step of reconsidering, on our own initiative, a claim raised in an initial post-conviction application for writ of habeas corpus in a capital murder case, but rejected by this Court in an order issued in 2000. Since that time, the United States Supreme Court has issued a pair of decisions that call into question the correctness (indeed, the objective reasonableness) of our original disposition of that claim. In light of those decisions, and considering the applicant's diligence in raising the claim in his initial state writ application, we will take another look, and, ultimately, grant relief.

**THE PROCEDURAL POSTURE**

The applicant filed this initial state application for writ of habeas corpus challenging his conviction for capital murder and death sentence on January 12, 1996.[1] The applicant had been convicted in January of 1987, and this Court affirmed his conviction in 1993.[2] In ground for relief number ten of his initial writ application, the applicant argued that the punishment charge submitted to the jury had been flawed under the Eighth Amendment because it did not empower the jury to give effect to certain mitigating evidence he had offered at the punishment phase of trial. He relied principally upon the United States Supreme Court's opinion in *Penry v. Lynaugh* (*Penry I*).[3] The convicting court recommended that we reject this claim on the merits because the jury could adequately consider the particular mitigating evidence that the applicant had presented within the ambit of the statutory special issues,[4] which in 1987 did not include the

---

[1] On its face, the applicant's initial writ application purported to be filed under the auspices of Article 11.07 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 11.07. However, post-conviction habeas corpus proceedings in capital cases are governed by Article 11.071 of the Code, which became effective on September 1, 1995. TEX. CODE CRIM. PROC. art. 11.071. *See* Acts 1995, 74th Leg., ch. 319, p. 2764, eff. Sept. 1, 1995.

[2] *Moreno v. State*, 858 S.W.2d 453 (Tex. Crim. App. 1993).

[3] 492 U.S. 302 (1989) (hereinafter "*Penry I*"). In *Penry v. Johnson*, 532 U.S. 782 (2001) (hereinafter "*Penry II*"), the Supreme Court would revisit Penry's case after his retrial.

[4] At the time of the applicant's offense, the relevant special issues were:

"(1) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

particular mitigation instruction currently found in Article 37.071, Section 2(e)(1).[5] In an unpublished written order dated September 13, 2000, this Court found the convicting court's findings of fact and conclusions of law, including its conclusion with respect to ground for relief number ten, to be supported by the record. On that basis we denied relief.

The applicant filed his initial federal petition for writ of habeas corpus on June 29, 2001. The federal district court subsequently granted the applicant's motion to abate his federal petition so that he could return to state court to exhaust a newly recognized claim that he could not be executed consistent with the Eighth Amendment because he is mentally retarded, under *Atkins v. Virginia*.[6] This Court dismissed his first subsequent state writ raising the *Atkins* claim because he failed to make out a prima facie claim of mental retardation. When the applicant returned to federal court, the district court denied relief on all of the claims raised in his federal habeas

---

(2) whether there is a reasonable probability that the defendant would commit criminal acts of violence that would constitute a threat to society[.]

*See former* TEX. CODE CRIM. PROC. art. 37.071, § (b)(1) & (2), prior to amendment by Acts 1991, 72nd Leg., ch. 838, p. 2899, eff. Sept. 1, 1991.

[5] *See current* TEX. CODE CRIM. PROC. art. 37.071, § 2(e)(1) ("The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under subsection (b), it shall answer the following issue: Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed.").

[6] 536 U.S. 304 (2002).

petition in a memorandum opinion and order issued on March 17, 2005.[7] The applicant did not

carry his initial-writ *Penry* claim forward into his federal petition. The Fifth Circuit affirmed the

district court's judgment,[8] and in January of 2007, the Supreme Court denied the applicant's

petition for certiorari.[9]

In April of 2007, the Supreme Court issued opinions in two companion cases, *Abdul-*

*Kabir v. Quarterman*,[10] and *Brewer v. Quarterman*.[11] In those two opinions, the Supreme Court

revisited *Penry I* and its progeny, and stated that a jury must be empowered by the trial court's

instructions to give "meaningful effect" to all mitigating evidence that a capital defendant

introduces at the punishment phase of his trial.[12] In light of these opinions, the applicant filed

a second subsequent application for writ of habeas corpus in state court, arguing that he satisfied

the criteria for filing a subsequent writ as enumerated in Section 5 of Article 11.071 of the Code

of Criminal Procedure. Equally divided as to how to dispose of the applicant's second

---

[7] *Moreno v. Dretke*, 362 F. Supp. 2d 773 (W.D. Tex. 2005).

[8] *Moreno v. Dretke*, 450 F.3d 158 (5th Cir. 2006).

[9] *Moreno v. Quarterman*, 127 S.Ct. 935 (2007).

[10] 127 S.Ct. 1654 (2007).

[11] 127 S.Ct. 1706 (2007).

[12] *Abdul-Kabir v. Quarterman*, *supra*, at 1669 ("The rule that we reaffirm today–a rule that has been clearly established since our opinion in *Penry I*–is this: Special instructions are necessary when the jury could not otherwise give *meaningful effect* to a defendant's mitigating evidence.").

subsequent writ application (four votes to allow the applicant to proceed versus four votes to dismiss), this Court issued an order on May 9, 2007, announcing that we declined to take any action.[13]

The next day, May 10, 2007, the date the applicant was scheduled to be executed, he filed a "suggestion" that the Court reconsider ground ten of his initial habeas application on its own initiative, pursuant to Rule 79.2(d) of the Texas Rules of Appellate Procedure.[14] In an unpublished order issued that same day, we exercised our authority to reconsider ground for relief number ten, and stayed his impending execution. We issued an additional order in the case on August 22, 2007, directing the parties to brief the following questions:

- What jurisdiction does this Court have to reconsider, on its own motion, a previously denied habeas claim when the applicant subsequently filed his state-exhausted claims concerning the same conviction in federal courts?

- At the time this Court denied his first application in 2000, was the applicant's *Penry*-based claim based on "clearly established" law? Was his claim available in 2003 when he filed his second, *Atkins*-based claim?

- What is the legal significance of the fact that the remedy that the applicant had requested at trial was a jury-nullification issue?

- Did the applicant demonstrate, in his original application for habeas corpus

---

[13] Since declining to take any action on the applicant's second subsequent writ application, this Court has unanimously declared that another subsequent writ application re-raising a *Penry I* claim could be brought under Article 11.071, Section 5(a). *See Ex parte Martinez*, 233 S.W.3d 319, 322-23 & n.8 (Tex. Crim. App. 2007).

[14] TEX. R. APP. P. 79.2(d) ("A motion for rehearing an order that denies habeas corpus relief under Code of Criminal Procedure, articles 11.07 or 11.071, may not be filed. The Court may on its own initiative reconsider the case.").

relief, that he was entitled to prevail on the merits of his *Penry*-based claim?

After briefing from the parties, the cause was submitted to the Court on November 7, 2007. We turn our attention to the merits of the applicant's *Penry I* claim, essentially addressing first the last of the four specific questions we asked the parties to brief.

## THE *PENRY I* CLAIM

### Proceeding to the Merits

The applicant was tried in 1987, more than two years before the Supreme Court's opinion in *Penry I*. In *Black v. State*, this Court declared that *Penry I* error may be raised for the first time on appeal or in a post-conviction proceeding, at least where, as here, the trial preceded the Supreme Court's opinion.[15] And in *Ex parte Goodman*, the Court held that a *Penry I* claim could be raised for the first time in a post-conviction habeas context even when the applicant failed to raise it on direct appeal.[16] In the instant cause, the applicant called the lack of a mitigation instruction to the trial court's attention and requested what amounts to a crude jury-

---

[15] 816 S.W.2d 350, 367-74 (Tex. Crim. App. 1991) (Campbell, J., concurring, joined by McCormick, P.J., and Clinton, Overstreet, Maloney and Benavides, JJ.) The rationale for recognizing a *Penry I* claim for the first time on appeal or in a post-conviction writ when the trial occurred prior to the decision in *Penry I* itself was that, at the time of trial, it was a "right not recognized," such that the defendant could not have been expected to object and thereby preserve error. We have since called the "right not recognized" exception to the contemporaneous objection rule into question, *Sanchez v. State*, 120 S.W.3d 359, 367 (Tex. Crim. App. 2003), but not until three years after we denied the applicant relief on the merits of his *Penry I* claim, in September of 2000. In any event, the applicant *did* adequately preserve the error at trial. *See* note 17, *post*.

[16] 816 S.W.2d 383, 385 (Tex. Crim. App. 1991). *See also Ex parte Kunkle*, 852 S.W.2d 499, 502 n.3 (Tex. Crim. App. 1993).

nullification instruction as a proffered means of remedying the perceived deficiency; he did not, however, raise the issue on direct appeal.[17] In its findings of fact and conclusions of law disposing of the applicant's initial writ application, the convicting court proceeded directly to the merits of the applicant's *Penry I* claim and made no ruling on the basis of procedural default. We therefore turn to the particular mitigating evidence that the applicant adduced at the punishment phase of his trial.

### The Mitigating Evidence

The applicant was born with a deformity to his left ear. Apparently abandoned by his birth parents, he was adopted as an infant by Elias and Carmen Moreno through a Catholic adoption agency. The applicant grew up in a small house that he shared with his parents and his grandmother. During the first seven years of his life, the applicant underwent five surgeries to try to correct his deformity. Neighborhood boys taunted the applicant because of his deformity, and his mother would console him. When the applicant was still a small child, both his mother and his grandmother became very ill. His father was compelled to take a second job in order to support his family and pay medical expenses of about $84,000. At times the applicant was

---

[17] The applicant's trial attorneys requested the trial court to instruct the jury, "If you find any evidence in mitigation of the defendant's acts, and it creates a reasonable doubt in your mind, you will so find by your answer to the special issues by answering no to the special issues." The State objected that a mitigation instruction had been deemed unnecessary in *Quinonez v. State*, 592 S.W.2d 933, at 947 (Tex. Crim. App. 1980). Thus alerted to the nature of the applicant's request (namely, for some kind of jury instruction that would enable the jurors to give effect to the mitigating impact of his punishment evidence beyond the scope of the special issues), the trial court expressly denied it. The applicant did not raise this denial as a point of error on appeal, but expressly complained about it in claim number ten of his initial writ application.

apparently sent to live with relatives, necessitating frequent changes in the schools he attended. When the applicant was about fifteen years old, his mother died, an event that he took "very hard." He dropped out of school and worked a number of menial jobs while living in his father's house, relatively unsupervised. The applicant was only eighteen years old at the time he committed his capital offense.

Various family friends testified that the applicant "has been a very good boy," was "polite," "respectful towards everyone," "sincere" in his religious devotion, and capable of being rehabilitated. A chaplain at the Bexar County jail who had counseled with the applicant testified that he did not impress her as "a cold-blooded killer," but more like "a frightened child." He described himself to her as "pretty much a loner for a long time, and did not have . . . a lot of close connections." She "sensed . . . that there was a lot of deep hurt for that." He expressed "a general remorse for the situation" to her. Another chaplain from the jail testified that the applicant asked him to provide a chess set. When the chaplain complied in a prompt manner, the applicant "was very surprised that I had brought it to him, brought it to him so quickly; and that he was somewhat surprised that someone would carry through with what they said they would do for him."

In ground for relief ten of his initial writ application, citing *Penry I*, the applicant argued:

> The mitigating evidence presented in the instant case is basically that of remorse, youth, . . . good character, and troubled childhood. [The applicant] requested an instruction on the consideration of mitigating evidence beyond the statutory special issues. These instructions would have given the jury a vehicle for expressing its "reasoned moral response" to mitigating evidence, yet they were

denied by the trial court.

The convicting court rejected this argument with the following conclusion of law:

> The applicant contends that the evidence he presented at the punishment phase of the trial was beyond the scope of the statutory special issue, thereby necessitating the submission of his specially requested instruction. See: Penry v. Lynaugh, supra. The applicant is not entitled to relief because the holding of Penry is inapplicable under the facts of the instant case. The fact that the applicant was viewed, by his family and friends, as a good boy who could be rehabilitated was not beyond the scope of the issue regarding future dangerousness, [and] the requested charge was properly refused. Johnson v. Texas, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993); Richardson v. State, 901 S.W.2d 941 (Tex. Crim. App. 1994), cert. den. 515 U.S. 1162, Ct. 2617 [sic], 132 L.Ed.2d 859 (1995); Satterwhite v. State, 858 S.W.2d 412 (Tex. Crim. App. 1993), cert. den. 510 U.S. 970, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993); Gosch v. State, 829 S.W.2d 775 (Tex. Crim. App. 1991) [cert. denied] 509 U.S. 922, 133 S.Ct. 3035, 125 L.Ed.2d 722 (1993).

In thus holding that the applicant's mitigating evidence was adequately encompassed within the future dangerousness special issue, the convicting court apparently took into account only the applicant's evidence of good character and remorse. It made no mention of the applicant's troubled childhood and did not ask whether that facet of his mitigation evidence was adequately covered by the special issues. In the recent opinions in *Abdul-Kabir* and *Brewer*, the United States Supreme Court has now made it clear that our resolution of the applicant's tenth ground for relief in his initial writ application, accepting as we did the convicting court's recommended conclusion of law, was incorrect. At least with respect to his evidence of a troubled childhood, the applicant was entitled to such a separate jury instruction.

### *Abdul-Kabir* and *Brewer*

After the Supreme Court's opinions in *Abdul-Kabir* and *Brewer*, it cannot be doubted that a jury must be empowered to give mitigating value to evidence of a disruptive or troubled childhood beyond whatever probative value it may have with respect to the statutory special issues. In the past, this Court has rejected the necessity for a *Penry I* instruction based upon such evidence, both because it "is unrelated to any aspect of how or why the death penalty would be an appropriate or inappropriate response to a defendant's actions[,]" and because the future dangerousness special issue "provides a vehicle for the jury to express its reasoned moral response" to such evidence.[18] Neither of these explanations can now be considered to offer a tenable justification for failing to submit a mitigation instruction after *Abdul-Kabir* and *Brewer*.

The first explanation is a manifestation of either the now-defunct "constitutional relevance" test, or the equally discredited "nexus" requirement. Over the past several years the Supreme Court has definitively rejected the holdings of this Court and the Fifth Circuit with respect to each.[19] A capital defendant need not demonstrate that his proffered mitigating circumstances rise to some particular level of gravity or severity; only that they have some relevance to a jury's normative evaluation of his death-worthiness.[20] Nor need he demonstrate

---

[18]

*Delk v. State*, 855 S.W.2d 700, 709 (Tex. Crim. App. 1993).

[19]

*Smith v. Texas*, 543 U.S. 37 (2004) (hereinafter "*Smith I*)"); *Tennard v. Dretke*, 542 U.S. 274 (2004). The Supreme Court later revisited Smith's case in *Smith v. Texas*, 127 S.Ct. 1686 (2007) (hereinafter "*Smith II*").

[20]

*Smith I*, *supra*, at 44 ("the jury must be given an effective vehicle with which to weigh mitigating evidence so long as the defendant has met a low threshold for relevance, which is satisfied by evidence

that his capital offense was in some sense attributable to his proffered mitigating circumstances before obtaining a *Penry I* instruction.[21] Circumstances of the offender himself (as opposed to the circumstances of the offense) can reasonably justify a jury assessment of a life sentence, regardless of whether they also have a tendency to ameliorate the offense.[22] If those circumstances are not already fully or meaningfully encompassed within one or both of the statutory special issues, then a separate jury instruction is constitutionally required.

Nor does our second explanation currently hold water. We can no longer maintain that evidence of a troubled childhood is adequately encompassed within the statutory special issues. Both *Abdul-Kabir* and (especially) *Brewer* expressly state that Supreme Court precedent has long rejected the notion that a jury can meaningfully express its reasoned moral response to evidence

which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.") (internal quotations omitted); *Tennard v. Dretke*, *supra*, at 285 ("Once this low threshold for relevance is met, the Eighth Amendment requires that the jury be able to consider and give effect to a capital defendant's mitigating evidence.") (internal quotations omitted); *see also Brewer*, *supra*, at 1712 ("It may well be true that Brewer's mitigating evidence was less compelling than Penry's, but, contrary to the view of the CCA, that difference does not provide an acceptable justification for refusing to apply the reasoning of *Penry I* to this case. * * * Nowhere in our *Penry* line of cases have we suggested that the question whether mitigating evidence could have been adequately considered by the jury is a matter purely of quantity, degree, or immutability.").

[21] *Smith I*, *supra*, at 45 (nexus requirement is "unequivocally rejected"); *Tennard*, *supra*, at 287 (capital defendant need not demonstrate "nexus" between mitigating evidence and the offense).

[22] *Tennard*, *supra* ("the question is simply whether the evidence is of such character that it 'might serve 'as a basis for a sentence less than death.'" *Skipper* [*v. South Carolina*], [476 U.S. 1,] at 5 [(1986)].").

of a troubled or disruptive childhood within the narrow confines of the special issues.[23]  A capital jury must be given greater leeway to exercise its reasoned moral response under the Eighth Amendment.  In light of the Supreme Court's most recent pronouncements, it now appears that our rejection of the tenth ground for relief in the applicant's initial writ application was so plainly incorrect under then-extant Supreme Court precedents as to have been "objectively unreasonable," even as of September of 2000, when we denied the applicant relief.[24]

It is evident to us now that in his tenth ground for relief in his initial writ application, the applicant presented facts which entitled him to a new punishment hearing.  The statutory special issues alone did not provide the applicant's jury with an adequate mechanism for exercising its reasoned moral judgment whether his evidence of a troubled childhood warranted the imposition of a life sentence instead of the ultimate penalty of death.  May we now grant him that relief on

---

[23]

*Abdul-Kabir*, *supra*, at 1673 ("a juror considering [Abdul-Kabir]'s evidence of childhood neglect and abandonment . . . or Brewer's evidence of . . . a troubled childhood could feel compelled to provide a 'yes' answer to [the future dangerousness special issue], finding himself without a means for giving *meaningful* effect to the mitigating qualities of such evidence."); *Brewer*, *supra*, at 1713 ("The transient quality of such mitigating evidence [of 'troubled background'] may make it more likely to fall in part within the ambit of the special issues; however, as we explained in *Penry I*, such evidence may still have relevance to the defendant's moral culpability beyond the scope of the special verdict questions.  (internal quotations omitted)  * * *  Like the 'constitutional relevance' standard that we rejected in *Tennard*, a 'sufficient effect' standard [*i.e.*, a standard by which *Penry I* may be satisfied so long as 'sufficient,' albeit less than 'full' mitigating effect may be given to proffered mitigating evidence within the confines of the statutory special issues] has no foundation in the decisions of this Court.").

[24]

We now know that clearly established Supreme Court precedent since *Penry I* has emphasized "the importance of allowing juries to give meaningful effect to any mitigating evidence providing a basis for a sentence of life rather than death."  *Abdul-Kabir*, *supra*, at 1672.  Indeed, the Supreme Court declared that the principles governing its decisions in *Abdul-Kabir* and *Brewer* were clearly established even as of September of 1990, some ten years before we rejected the applicant's *Penry I* claim in his initial writ application.  *Id*. at 1659.

reconsideration of his claim? Turning to the remaining questions we ordered the parties to brief, we hold that we may.

## RECONSIDERATION ON OUR OWN INITIATIVE

### Jurisdiction

We adopted the current incarnation of Rule 79.2(d) in 1997, pursuant to our legislatively endowed authority to promulgate rules of post-trial procedure in criminal cases.[25] It provides that a habeas applicant may not file a motion for rehearing from an order denying relief, but that "[t]he Court may on its own initiative reconsider the case."[26] On its face, the rule places no temporal limitation on our authority to reconsider a post-conviction application for writ of habeas corpus on our own initiative.

In 1995, as part of the legislation by which it first enacted Article 11.071 of the Code of Criminal Procedure, the Legislature withdrew this Court's rulemaking authority "with respect to rules of appellate procedure relating to an application for a writ of habeas corpus, but only to the extent the rules conflict with a procedure under Article 11.071, Code of Criminal Procedure,

---

[25] See TEX. CONST. art. V, § 31(c) ("The legislature may delegate to the . . . Court of Criminal Appeals the power to promulgate such other rules as may be prescribed by law of this Constitution, subject to such limitations and procedures as may be provided by law."); TEX. GOV'T CODE § 22.108(b) ("The court of criminal appeals may promulgate a comprehensive body of rules of posttrial, appellate, and review procedure in criminal cases and from time to time may promulgate a specific rule or rules of posttrial, appellate, or review procedure in criminal cases or an amendment or amendments to a specific rule or rules. * * * The rules and amendments to rules remain in effect unless and until disapproved, modified, or changed by the legislature.")

[26] See note 14, ante.

as added by this Act[.]"[27] The State suggests that Rule 79.2(d) may conflict with Article 11.071, insofar as this Court has declared that "Article 11.071 now contains the *exclusive* procedures for the exercise of this Court's original habeas corpus jurisdiction in death penalty cases."[28] Section 1 of Article 11.071 provides that: "Notwithstanding any other provision of [Chapter 11 of the Code of Criminal Procedure], this article establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death."[29] Plainly, this provision was meant to prescribe a particular procedural mechanism for the pursuit of habeas corpus relief in death-penalty cases as opposed to procedures that Chapter 11 prescribes for other post-conviction contexts. A rule authorizing this Court to reconsider its disposition of a post-conviction writ in a death-penalty case does not in any way establish a new or separate procedure for applications for writ of habeas corpus in death-penalty cases in contravention of Section 1 of Article 11.071. We find no language in the balance of Article 11.071 that either allows or prohibits this Court's reconsideration of our initial disposition of a capital writ on our own motion or expressly or implicitly prescribes temporal limitations on any such reconsideration.

Although we obviously would not choose to exercise this authority very often, especially

---

[27] *See* Acts 1995, 74th Leg., ch. 319, § 6, p. 2772, eff. Sept. 1, 1995.

[28] *Ex parte Smith*, 977 S.W.2d 610, 611 (Tex. Crim. App. 1998); *Ex parte Davis*, 947 S.W.2d 216, 222 (Tex. Crim. App. 1996) (McCormick, P.J., concurring).

[29] TEX. CODE CRIM. PROC. art. 11.071, § 1.

years after an initial order denying relief, under the most extraordinary of circumstances we *may* do so. Once we have initially denied an applicant relief in his state habeas proceedings and he then proceeds through the federal habeas corpus process and is denied relief there, is our authority to revisit the state writ application under Rule 79.2(d) adversely impacted? We do not think so.

State and federal courts share concurrent habeas corpus jurisdiction to review the constitutional legitimacy of a conviction or death sentence obtained in state court.[30] The respective courts have fashioned certain doctrines–the abstention doctrine, on our part, and the exhaustion doctrine, on the part of the federal courts–in the interest of "comity, efficiency, and expediency,"[31] "avoidance of piecemeal litigation or inconsistent results, and judicial economy."[32] These doctrines are designed so that, in exercising their concurrent jurisdictions, the respective courts can (to put it colloquially) stay out of one another's way. But they are not jurisdictional doctrines.[33] It does not encroach upon any federal prerogative for us to entertain rehearing of an initial writ after federal proceedings have been resolved against the applicant.

---

[30] *See* TEX. CODE CRIM. PROC. art. 11.071 & 28 U.S.C. § 2241, respectively.

[31] *Ex parte Soffar*, 120 S.W.3d 344, 346 (Tex. Crim. App. 2003)

[32] *Ex parte Soffar*, 143 S.W.3d 804, 805 (Tex. Crim. App. 2004).

[33] A federal court has the authority to entertain and *deny* a claim on the merits that has not been exhausted in state court, even if not authorized to *grant* relief on an unexhausted claim. *See* 28 U.S.C. § 2254(b)(1)(A) & (b)(2).

After all, the federal courts do not review the "correctness" of state-court resolutions of federal constitutional issues in the course of federal habeas corpus proceedings; under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal habeas courts are not at liberty to overturn a state-court decision unless it represents an "objectively unreasonable" application of Supreme Court precedent.[34] An individual state must surely retain the authority, if it should so choose, to revisit one of its own judgments if there is a compelling reason to believe that it may not have been "correct" on original submission. Thus, we find nothing in the fact that the applicant has been denied relief in his federal habeas proceedings that would somehow inherently deprive this Court of the authority, under our own state rules of appellate procedure, to reconsider the applicant's *Penry I* claim.

That does not mean that we are *bound* to do so or that we should ever do so lightly. Even if comity or the possibility of inconsistent results are not implicated at this juncture, judicial economy and the avoidance of piecemeal litigation remain legitimate concerns that counsel against disturbing our initial disposition, absent compelling circumstances. After all, habeas corpus is an equitable remedy, and, as the applicant concedes, "[e]quity aids the diligent and not

---

[34] *Williams v. Taylor*, 529 U.S. 362, 409-12 (2000) ("Stated simply, a federal habeas court making the 'unreasonable application' inquiry [under 28 U.S.C. § 2254(d)(1)] should ask whether the state court's application of clearly established federal law was objectively unreasonable. * * * For purposes of today's opinion, the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law. * * * Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable.").

those who slumber on their rights."[35] We should and will be extremely hesitant ever to exercise our authority to reconsider a decision on an initial post-conviction habeas corpus application, particularly after the passage of a substantial number of years. In almost every instance, the State's legitimate interest in the repose and finality of its convictions–even its interest in punishment as weighty and irrevocable as the death penalty–will be substantial indeed and ought not to be disturbed, even in the face of a reasonable and good faith argument that our disposition on original submission was "incorrect."

That being said, however, we do not hesitate to reconsider and grant relief in the instant case. Here, the applicant did not "slumber on his rights." He objected at trial and raised his claim timely in his initial application for writ of habeas corpus. And as soon as it became clear to him that our original disposition was not only "incorrect," but indeed, so plainly incorrect that today it would undoubtedly be considered "objectively unreasonable" by the Supreme Court, the applicant renewed his claim, first in an attempted subsequent writ application, and then, when this Court was unable to muster a majority to take action on that, by way of his suggestion that we reconsider the issue from his initial writ application on our own initiative. We find it

---

[35]

*Callahan v. Giles*, 155 S.W.2d 793, 795 (Tex. 1941). *See also Ex parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999) ("We agree with the State that the doctrine of laches is a theory which we may, and should, employ in our determination of whether to grant relief in any given [Article] 11.07 case."); *In re Steptoe*, 132 S.W.3d 434, 439-40 (Tex. Crim. App. 2004) (Cochran, J., dissenting) ("In Texas habeas corpus law, as in federal law, equity is not intended for those who sleep on their rights.") (internal quotations and footnote omitted); *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994) ("Because of the unique nature of the remedy, habeas corpus relief is underscored by elements of fairness and equity.").

appropriate under these extraordinary circumstances to exercise our authority under Rule 79.2(d) to reconsider our original disposition of the applicant's *Penry I* claim.[36]

### "Clearly Established Law"

Nor do we think it can fairly be said that the applicant "slumbered on his rights" by failing to raise his *Penry I* claim in his first subsequent writ application which he filed in 2003. Of course, the claim would have been just as "clearly established" in 2003 as it was in 2000, when we denied his initial writ application. But there was no new case law in the interim, either from this Court or from the Supreme Court, that should have alerted the applicant that his *Penry I* claim had gained renewed vitality. Not until 2004, with the advent of the Supreme Court's opinions in *Tennard* and *Smith I*, could it have begun to become apparent that both this Court's and the Fifth Circuit's applications of *Penry I* were, in a number of instances, likely to be declared not just "incorrect," but even "objectively unreasonable." And not until *Abdul-Kabir* and *Brewer* did the Supreme Court unequivocally declare that our treatment of evidence of a troubled childhood as both having no practical mitigating impact, and at the same time, adequately covered by the statutory special issues, was a plain misconstruction of its precedents. The applicant should not be denied relief upon our reconsideration of his initial *Penry I* claim on the grounds that he failed to exercise appropriate diligence in reasserting a *Penry I* claim in

---

[36] We reiterate that, since filing and setting the applicant's tenth ground for relief for reconsideration on our own initiative, we have granted relief to another capital habeas applicant on a *Penry I* claim that he brought in a subsequent post-conviction writ application brought under the auspices of Section 5 of Article 11.071. *See* note 13, *ante*.

2003, when he timely and diligently pursued a newly recognized *Atkins* claim. We cannot fault

the applicant any more than we can fault ourselves.[37]

## Nullification Instruction

Nor do we think it fatal to the applicant's renewed *Penry I* claim that he requested the trial

court to remedy the defect in the punishment charge by submitting to the jury an instruction that

the Supreme Court subsequently declared, in *Penry II* and in *Smith I*, to be inadequate.[38] The

State argues that, in light of these recent precedents, a nullification instruction fails to remedy

the Eighth Amendment deficiency, but concedes that "[p]erhaps the trial judge was informed by

the requested charge that some sort of instructions was needed to insure jurors could give effect

to mitigating evidence where the special issues do not."[39] We agree with the State's tentative

concession that, though flawed, the applicant's requested instruction was nevertheless sufficient

---

[37]

If it was the applicant's second subsequent writ application that we were presently addressing, the question whether the applicant would be permitted to pursue his renewed *Penry I* claim would be governed by *Ex parte Hood*, 211 S.W.3d 767 (Tex. Crim. App. 2007). There we held that once a habeas applicant has "exhausted" a claim by raising it unsuccessfully in an initial writ application, he may raise the same claim again in a subsequent writ application if legal developments occurring after the disposition of the initial writ breathe new life into the claim. *Id*., at 776, & 778. It was on the basis of this holding that we permitted the applicant in *Ex parte Martinez*, *supra*, at 322-23, to pursue his renewed *Penry I* claim in a subsequent writ application. Here, as in *Martinez*, because the applicant filed his first subsequent writ application in 2003, prior to the Supreme Court's opinions in *Tennard*, *Smith I*, *Abdul-Kabir*, and *Brewer*, he was not barred, consistent with our analysis in *Ex parte Hood*, from raising his revitalized *Penry I* claim in his second subsequent writ application.

[38]

*Penry II*, *supra*; *Smith I*, *supra*. *See* note 17, *ante*.

[39]

State's Brief, at 9-10. This is, in fact, the entirety of the State's discussion of the legal significance of the fact that the applicant asked for a nullification instruction at trial.

to alert the trial court to the Eighth Amendment problem, even if the proffered solution was inadequate. A defendant's requested jury instruction need not be flawless or even correct in order to call the trial court's attention to a deficiency in the charge and thereby preserve error.[40] As the applicant points out in his brief, it is apparent that the petitioner in *Abdul-Kabir* had also alerted the trial court to the deficiency in the jury charge in his case by requesting what amounted to a series of jury nullification instructions.[41] The Supreme Court was obviously aware of this circumstance, but did not regard it as any impediment to federal habeas relief.

Moreover, it could not reasonably be said that the applicant in any respect "invited" *Penry I* error by requesting a nullification instruction.[42] The trial court did not *give* the applicant's requested nullification instruction. Therefore, the kind of independent error that may arise from an instruction that authorizes jurors to ignore the obligation of their oaths and render false answers to the special issues, tentatively recognized in *Penry II*, *Smith I*, and *Smith II*,[43] did not

---

[40] *E.g.*, *Williams v. State*, 630 S.W.2d 640, 643 (Tex. Crim. App. 1982); *Stone v. State*, 703 S.W.2d 652, 655 (Tex. Crim. App. 1986); *Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996); *Francis v. State*, 36 S.W.3d 121, 123 (Tex. Crim. App. 2000).

[41] Applicant's Brief, at 20-23. *See Abdul-Kabir v. Quarterman*, *supra*, at 1662 ("The trial judge refused to give any of several instructions requested by [Abdul-Kabir] that would have authorized a negative answer to either of the special issues on the basis of 'any evidence which, in [the jury's] opinion, mitigated against the imposition of the Death Penalty, including any aspect ot the Defendant's character or record.'") (quoting the Joint Appendix of the parties, at 115) (first brackets supplied; second brackets in the original).

[42] *See Prytash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) ("The doctrine of invited error is properly thought of, not as a species of waiver, but as estoppel.")

[43] *Penry II*, *supra*, at 800; *Smith I*, *supra*, at 47-8; *Smith II*, *supra*, 127 S.Ct. at 1691. *See also Ex*

occur in the applicant's trial; nor is that the error he complained about in the tenth ground for relief in his initial writ application. We have already concluded that the applicant's requested instruction, along with the State's response, was sufficient to put the trial court on notice of the particular Eighth Amendment error that the applicant *did* raise in his tenth ground for relief, *viz*: that the court's punishment charge did not empower the jury to give mitigating effect to, *inter alia*, his evidence of a troubled childhood.[44]

## CONCLUSION

Because the evidence that the applicant proffered at the punishment phase of his capital murder trial with respect to his troubled childhood could not be given meaningful effect within the context of the statutory special issues, the trial court erred in failing to give a separate jury instruction that would empower the jury to assess a life sentence on the basis of such mitigating evidence, notwithstanding its answers to the special issues. We therefore sustain the applicant's tenth ground for relief. The punishment portion of the judgment of the trial court is vacated, and the applicant is remanded to the trial court for a new punishment hearing.[45]

Delivered:    February 6, 2008
Publish

---

*parte Hood*, *supra*, at 77-78.

[44] *See* note 17, *ante*.

[45] *Ex parte Martinez*, *supra*, at 324. *See* TEX. CODE CRIM. PROC. art. 44.29(c); *Clark v. State*, 994 S.Ct. 166 (Tex. Crim. App. 1999).