IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,917






EX PARTE GENE WILFORD HATHORN, JR., Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


IN CAUSE NO. 6958-B IN THE 411TH DISTRICT COURT

TRINITY COUNTY






 Meyers, J., delivered the opinion of the Court in which Price, Johnson,
Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Keller, P.J., and
Womack, J., concurred. 



O P I N I O N


 

 Applicant was convicted of capital murder and sentenced to death in 1985. On
direct appeal, we affirmed his conviction and sentence. Hathorn v. State, 848 S.W.2d 101
(Tex. Crim. App. 1992). While Applicant's direct appeal was pending before us, the
United States Supreme Court handed down an opinion in Penry v. Lynaugh, 492 U.S. 302
(1989). In his initial application for writ of habeas corpus, Applicant argued that his jury
was not instructed to consider mitigating circumstances in determining his sentence. We
denied relief. In a subsequent writ, Applicant claimed that "[t]he former Texas special
issue questions operated so as to preclude any meaningful consideration of mitigation
evidence by the jury that sentenced the Applicant in violation of the Eighth and
Fourteenth Amendments and Penry v. Lynaugh, 492 U.S. 302 (1989) (Penry I)." Because
this was his third subsequent application, it was barred under Code of Criminal Procedure
Article 11.071, section 5, and we dismissed the application as an abuse of the writ. We
now reconsider, on our own initiative, the Penry claim raised in Applicant's initial
application for writ of habeas corpus. We filed and set this case and ordered briefs from
the parties on the following issues:

 1. Did applicant object at trial that his jury was not given an adequate
vehicle through which it could give effect to his mitigating evidence? Was
any other objection specifically pertaining to mitigating evidence made
when discussing the charge to be given the jury?

 

 2. If no objection was made, does this make a difference regarding the
resolution of applicant's allegation?

 

 3. Was the mitigating evidence presented at applicant's trial the type of
evidence for which applicant was entitled to a separate vehicle?

 

 4. Although applicant's direct appeal began prior to the time the United
States Supreme Court handed down the decision in Penry, was direct appeal
counsel obligated to raise the claim post-submission considering applicant's
direct appeal remained pending in this Court for some three years after the
Penry decision was handed down?


ISSUES ONE AND TWO

 There was no objection at trial pertaining to mitigating evidence. Applicant did
object to the trial court's refusal to include a special issue related to provocation, and it is
interesting to note that the evidence in support of the provocation instruction was the
same evidence that is now raised as mitigating evidence. The evidence is the same in this
case specifically because Applicant killed his father, step-mother, and half-brother and
claimed at trial that the murders were provoked by childhood abuse at the hands of his
father, which resulted in a longstanding hatred for his family. 

 Although Applicant made no objection that the jury did not have a vehicle to give
effect to mitigating evidence, we have held that, in these particular circumstances, no
objection is necessary. Black v. State, 816 S.W.2d 350 (Tex. Crim. App. 1991). The case
law at the time of Black's trial and Applicant's trial stated that, regardless of whether the
defendant objected to the charge or whether special mitigation instructions were
requested, the defendant was not entitled to any jury instructions on mitigating evidence
beyond that covered by the future-dangerousness special issue. We stated in Black, 

 Given the settled state of the case law at the time of appellant's trial, we
refuse to fault him or his attorney for failing to object to the jury charge at
punishment or request an instruction informing the jury it may give effect to
the mitigating evidence presented at trial. Under the established precedent,
the trial judge would have been correct in overruling the objection or
denying the additional instruction, and clearly the defendant would not have
been granted relief from this Court on direct appeal. 

816 S.W.2d at 364. We held that, for cases tried during this time period, there was no
procedural default and thus we were able to address the merits of the claim. Id.

 We acknowledge that normally, an egregious harm standard is proper in analyzing
an un-objected-to charge error. However, rather than characterize this as a jury charge
error, we interpret the Supreme Court cases related to this particular issue to have broader
due process implications. See infra.

ISSUE THREE

 The evidence presented at trial was the type of evidence that we have said requires
a separate vehicle in order for the jury to be able to give effect to their consideration of
the evidence. Applicant testified at the punishment hearing that his father and step-mother were neglectful; that his father was abusive and beat him nightly during his first
two years of grade school-on one occasion for going to church; that his father had shot
and killed his pony and a dog and appellant had to bury the dog; and that his father was
violent and carried a weapon. The former Chief Psychologist for the Texas Department
of Corrections testified about Applicant's violent and dysfunctional home environment
and how it may have shaped his development and contributed to the offense for which he
was charged.

 As the Supreme Court pointed out in Brewer v. Quarterman, 550 U.S. 286 (2007),
the evidence that gives rise to a Penry claim is broadly defined as mitigating evidence,
which is a "two-edged sword," meaning that it tends "to confirm the State's evidence of
future dangerousness as well as lessen [the defendant's] culpability for the crime." 
Brewer, 550 U.S. at 293. The Court also explained that, 

 Nowhere in our Penry line of cases have we suggested that the question
whether mitigating evidence could have been adequately considered by the
jury is a matter purely of quantity, degree, or immutability. Rather, we have
focused on whether such evidence has mitigating relevance to the special
issues and the extent to which it may diminish a defendant's moral
culpability for the crime. 

Brewer, 550 U.S. at 294. On the same day as Brewer, the Court decided Abdul-Kabir v.
Quarterman, 550 U.S. 233 (2007), in which the Court illustrated that the special issues
given to the jury at the time of Applicant's trial did not provide the jury with a way to
give effect to mitigating evidence: "a juror considering [Abdul-Kabir's] evidence of
childhood neglect and abandonment and possible neurological damage or Brewer's
evidence of mental illness, substance abuse, and a troubled childhood could feel
compelled to provide a 'yes' answer to the [future-dangerousness] question, finding
himself without a means for giving meaningful effect to the mitigating qualities of such
evidence." Abdul-Kabir 550 U.S. at 262.

 Following these decisions by the Supreme Court, we decided in Ex Parte Moreno,
245 S.W.3d 419 (Tex. Crim. App. 2008) that: 

 We can no longer maintain that evidence of a troubled childhood is
adequately encompassed within the statutory special issues. Both Abdul-Kabir and (especially) Brewer expressly state that Supreme Court precedent
has long rejected the notion that a jury can meaningfully express its
reasoned moral response to evidence of a troubled or disruptive childhood
within the narrow confines of the special issues. 

Moreno, 245 S.W.3d at 426. We held that, "The statutory special issues alone did not
provide the applicant's jury with an adequate mechanism for exercising its reasoned
moral judgment whether his evidence of a troubled childhood warranted the imposition of
a life sentence instead of the ultimate penalty of death." Id. Cf. Black, 816 S.W.2d at 364
(determining that the future-dangerousness special issue was adequate for the jury to
consider the evidence that was presented, which did not include allegations of child abuse
or trauma).

 As in Brewer, it is likely that, in Applicant's case, the jury believed that all they
needed to decide was whether he had acted deliberately and would likely be dangerous in
the future, disregarding any concern they may feel that, given Applicant's troubled
childhood, he may not deserve a death sentence. See Brewer, 550 U.S. at 293-294.

ISSUE FOUR

 Because the United States Supreme Court handed down the decision in Penry v.
Lynaugh, 492 U.S. 302 (1989), while Applicant's case was pending on direct appeal
before us, Applicant could have filed a supplemental brief raising a Penry claim at that
time. See Ramirez v. State, 815 S.W.2d 636, 654-55 (Tex. Crim. App. 1991) (in which
we sustained the appellant's Penry issue, which was raised for the first time in a
supplemental brief submitted while his direct appeal was pending). However, in Moreno,
we considered the applicant's initial writ although the Penry issue had not been raised in
a supplemental brief on direct appeal. Moreno, 245 S.W.3d 421. Moreno was
procedurally similar to this case in that the opinion in Penry I was handed down while the
direct appeal was pending before us. We will not hold Applicant to a different standard
by saying that this claim is procedurally defaulted by his failure to file a supplemental
brief raising this issue on direct appeal.

CONCLUSION

 Given the unique circumstances of this case, and the state of the law at the time of
Applicant's trial and direct appeal, Applicant's claim is not barred by procedural default
for failure to object to the lack of a mitigation instruction at trial, or for failure to file a
supplemental brief raising a Penry claim on direct appeal. Because the mitigating
evidence presented at Applicant's trial is the type of evidence for which he was entitled to
a separate vehicle for consideration, we remand the case to the trial court for new
punishment hearing.


 Meyers, J.

Delivered: April 8, 2009

Publish