

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-73,484-02

### EX PARTE NEAL HAMPTON ROBBINS, Applicant

## ON STATE'S MOTION FOR REHEARING
## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NO. 98-06-00750-CR(2) IN THE 410TH DISTRICT COURT
## MONTGOMERY COUNTY

**ALCALA, J., filed a concurring opinion.**

### CONCURRING OPINION

I join this Court's order because its effect is to grant Neal Hampton Robbins, applicant, the relief to which he has been due but has been denied for half a decade. This concurring opinion marks the third time in less than five years that I must document my position in favor of granting post-conviction relief to applicant, who is incarcerated for capital murder in a case in which there is no competent evidence that a murder even occurred. *See Ex parte Robbins*, No. WR-73,484-02, 2014 WL 6751684, at *11 (Tex. Crim. App. Nov. 26, 2014) (*Robbins II*) ("It is hard to imagine any reasonable jury's returning a conviction when no one can even say

confidently that a murder has been committed."). As I have repeatedly stated, applicant should be granted habeas relief, and today that finally occurs. This is the correct result. But it is five years too late and it comes at the high cost of diminishing this Court's credibility. Today's decision should give no one any comfort about the actual viability of the current version of Article 11.073 of the Texas Code of Criminal Procedure, the new-science statute in Texas.

## I. The Five Events that Have Finally Culminated in Habeas Relief

This years-long litigation serves as a prime example of the lengths to which some litigants must go in order to obtain relief from their wrongful convictions. I explain each of the five events to demonstrate that applicant has been incarcerated for more than a decade on a wrongful conviction where it was abundantly clear to me long ago that his conviction should have been vacated.

## A. The Writ Application on the Basis of False Testimony

In 2007, applicant filed an initial writ application in which he sought relief on the basis that the trial testimony of the medical examiner, Dr. Moore, was both false and material to his conviction, in violation of the Due Process Clause of the Fourteenth Amendment. *See Ex parte Robbins*, 360 S.W.3d 446, 454 (Tex. Crim. App. 2011) (*Robbins I*). This Court's then-majority denied relief. *Id.* at 463. It reasoned that, although Dr. Moore had "changed her position" regarding the cause and manner of the complainant's death from homicidal asphyxiation to "undetermined," her trial testimony was not false. *Id*. at 460-61. In my

dissent in *Robbins I*, I disagreed with this holding, instead concluding that Robbins's due-process rights were violated by the false, material trial testimony of Dr. Moore, who was the State's sole medical expert establishing cause and manner of death at applicant's trial. *See id.* at 476 (Alcala, J., dissenting). I observed that Dr. Moore had indicated at trial that it was her scientific opinion beyond a reasonable doubt that the cause of Tristen Rivet's death was asphyxia due to compression of the chest and abdomen, and the manner of death was homicide. *Id.* at 477. Later, Dr. Moore revised her opinion to state that the cause of death was not compression asphyxia but was instead undetermined, and the manner of death was undeterminable as to homicide, asphyxial or otherwise. *Id.* Regarding this change in Dr. Moore's opinion, I observed that her "subsequent testimony was a complete refutation of her trial testimony" and that "[b]oth positions cannot be true." *Id.* Given that Dr. Moore's testimony was both false and material to the jury's determination of applicant's guilt, I would have granted applicant relief in 2011 on the basis of a due-process violation. *Id.* at 480. Because this Court denied his request for relief, applicant turned to the Legislature for a solution, and it responded by enacting a new-science statute to address wrongful convictions based on bad science.[1]

---

[1]Applicant has suggested that this Court could reopen his initial writ application and grant him relief on the basis of a due-process violation stemming from Dr. Moore's false trial testimony. *See Ex parte Moreno*, 245 S.W.3d 419, 427 (Tex. Crim. App. 2008) (holding that this Court may, on its own initiative, reconsider its prior judgment on a post-conviction application for a writ of habeas corpus). I would also have voted to reopen applicant's initial writ and grant him relief on his false-evidence claim, for the reasons stated in my dissenting opinion in *Robbins I*.

**B. The 2013 Version of Article 11.073**

In 2013, the Legislature enacted a new-science statute, Code of Criminal Procedure Article 11.073, in order to provide a vehicle for granting post-conviction relief to individuals whose convictions were based on faulty or discredited science. *See* TEX. CODE CRIM. PROC. art. 11.073 (West 2013). Relying on that statute's authority, applicant filed an application for post-conviction habeas relief, and this Court's then-majority, including me, granted him relief. *See Robbins II*, 2014 WL 6751684, at *10-11. In *Robbins II*, this Court's majority opinion explained that, in order to obtain relief under Article 11.073, the applicant must include in his application specific facts showing that the "relevant scientific evidence is currently available and was not available at the time of [his] trial because the evidence was not ascertainable through the exercise of reasonable diligence by the convicted person before the date of or during [his] trial." *Id.* at *9 (quoting TEX. CODE CRIM. PROC. art. 11.073). Resolution of this case came down to the meaning of the term "scientific knowledge." This Court's majority held that Dr. Moore's revised opinion on the cause of death satisfied the requirements to be characterized as "scientific knowledge" because her opinion at trial was "admissible scientific evidence, based on inferences derived from the scientific method," and her new opinion was "also an inference or assertion supported by appropriate validation based on the scientific method." *Id.* at *10. Given that Dr. Moore's original and revised opinions were both derived from the scientific method, this Court reasoned that the change to her opinion constituted a change in the relevant "scientific knowledge" as that term appears in Article 11.073. *Id.*; *see*

*also* TEX. CODE CRIM. PROC. art. 11.073(d). The Court then further concluded that, on the preponderance of the evidence, had Dr. Moore's revised opinion been presented at trial, applicant would not have been convicted, and it granted him relief. *Robbins II*, 2014 WL 6751684, at *11. I continue to agree with the Court's reasoning in *Robbins II*, including its broad reading of the term "scientific knowledge." *See id.* at *10. I also continue to believe that it was appropriate to grant applicant relief under the 2013 statute.

As will be more evident in my later discussions, the voting pattern of the judges participating in the *Robbins II* decision, which was reached by a five-to-four vote, is important to understanding my discomfort with today's decision. The *Robbins II* majority opinion was authored by Judge Womack and joined by Judges Price, Johnson, Cochran, and me. *See Robbins II*, 2014 WL 6751684, at *1. The *Robbins II* dissenters were Presiding Judge Keller and Judges Meyers, Keasler, and Hervey. *Id*. at *11.[2] Because three of the judges who were part of this Court's then-majority in *Robbins II* have since retired and all of the dissenting judges remain on this Court, the continued viability of the *Robbins II* opinion remains uncertain in light of this Court's inconsistent rulings on the State's motion for rehearing in this case, which I turn to now.

### C. The State's Motion for Rehearing in *Robbins II*

After the issuance of *Robbins II*, the State filed a motion for rehearing that was

---

[2]Presiding Judge Keller filed a dissenting opinion, in which Judge Hervey joined. *See Ex parte Robbins*, No. WR-73,484-02, 2014 WL 6751684, at *22 (Tex. Crim. App. Nov. 26, 2014). Judges Keasler and Meyers also filed dissenting opinions. *See id.* at *23-30.

presented to the newly formed 2015 Court, which included Judges Richardson, Yeary, and Newell as replacements for Judges Price, Womack, and Cochran. On the notice granting the State's motion for rehearing, Judges Johnson, Newell, and I were shown as dissenting. Because this Court's granting of the State's motion for rehearing was a per curiam decision, it is apparent that at least five of the remaining six judges on the Court voted to grant rehearing. Thus, the per curiam Court that granted the State's motion for rehearing was comprised of at least five of these six judges: the four dissenters in *Robbins II*, Presiding Judge Keller and Judges Meyers, Keasler, and Hervey; Judge Richardson; and Judge Yeary. Because of this vote granting rehearing in *Robbins II*, it appeared that, as of early 2015, this Court's majority opinion to grant relief under the 2013 new-science statute might be in jeopardy. Thus, again, the Legislature stepped in.

### D. The 2015 Present Version of the Amended Article 11.073

In mid-2015, the Legislature amended Article 11.073. *See* TEX. CODE CRIM. PROC. art. 11.073 (West 2015) (amended by Act of 2015, 84th Leg., ch. 1263 (H.B. 3724), § 1, eff. Sept. 1, 2015). At the oral argument that followed this Court's granting of the State's motion for rehearing on *Robbins II*, applicant's counsel argued that, if this Court were to decide to withdraw its opinion in *Robbins II*, he would pursue relief under the 2015 version of Article 11.073. The State agreed that applicant likely would be entitled to relief under the amended statute. After the 2015 amendment, it appeared clear to applicant, the State, and to me that habeas relief for applicant was inevitable under the 2015 amendment. Thus, regardless of this

Court having granted rehearing in *Robbins II*, applicant almost certainly would be entitled to relief under either the former 2013 statute or the present amended 2015 statute. The only real question for this Court at that point was whether it would (1) issue an opinion applying the 2015 amendment so that other litigants could understand this Court's position on it in light of the precedent set by the instant case, or, alternatively (2) withdraw the order granting rehearing on *Robbins II* so as to limit this Court's granting of relief in this case to the former statute and, perhaps, to leave the applicability of the present statute undetermined due to the resolution of the instant case under the former statute. Maybe because option two was deemed the lesser of two evils in the eyes of some of the members of this Court, most of the dissenters in *Robbins II* who had originally voted to grant rehearing in this case have changed their former votes to now vote against the State's motion for rehearing.

### E. Today's Order Withdrawing the Granting of Rehearing of *Robbins II*

Having dissented in *Robbins II*, and having likely voted in favor of granting rehearing in this case, today at least two of these three judges, if not all three—Presiding Judge Keller and Judges Keasler and Hervey—rescind their latter vote to now vote to deny rehearing in *Robbins II*. It is apparent to me that they have not changed their views on the merits of *Robbins II*; they have not withdrawn or modified their dissenting opinions in *Robbins II*. Rather, although they apparently still believe that *Robbins II* was incorrectly decided, they now vote to reinstate the *Robbins II* majority opinion. To vote for the State, then again for the State, and now, while maintaining the correctness of their earlier opinions, vote against

the State, can be described as curious, at best.

I note that Judge Meyers was part of this Court when *Robbins II* was decided, and he was one of the dissenters who also voted in favor of granting the State's motion for rehearing. Today, he votes consistently by again voting in favor of granting the State's motion for rehearing.

I believe that judges have the right to study the issues and, upon further reflection, change their minds. But that does not appear to be what is occurring here. This is an extremely strange and unprecedented turn of events. The three dissenting judges in *Robbins II* maintain their former dissenting opinions that relief should not have been granted to applicant under the 2013 statute, but they now appear to vote in a manner that has the effect of granting relief to applicant. Though their vote ends up at the right place in that the correct result occurs, it is a day late and a dollar short. Or, rather, it is about a year or more late and it is significantly short because the dissenters in *Robbins II* appear to maintain their view that similarly situated defendants are not entitled to habeas relief under the new-science statute. What is going on here? I do not envy the position of future litigants who must try to decipher this Court's position on when relief is warranted under the new-science statute. Because of the strategic maneuvering that has plagued this case now for more than a year, the answer to that question is entirely unclear.

## II. Conclusion

This Court's judicial decisions should not require litigants to run to the Legislature for

a statutory response to correct our judicial mistakes. This Court's judicial decisions should not give the appearance of indecision or manipulation for the achievement of a desired result. And this Court's judicial decisions should not come half a decade too late while a defendant remains incarcerated based on what is clearly a wrongful conviction. I join this Court's order because it has the correct result, but this case will, for a very long time, leave an indelible stain on this Court's reputation for providing a fair forum for all litigants. With these comments, I join this Court's order.

Filed: January 27, 2016

Publish