

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-68,348-03

### EX PARTE JUAN LIZCANO, Applicant

### ON APPLICANT'S APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. W05-59563-S(A) FROM THE 282ND JUDICIAL DISTRICT
### COURT OF DALLAS COUNTY

**YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined.**

### DISSENTING OPINION

Today the Court re-opens Applicant's initial post-conviction application for writ of habeas corpus and, based upon a finding that he suffers from an intellectual disability ("ID"), reforms his sentence from death to a lifetime term of confinement without parole. The Court does so at the recommendation of the convicting court, and with the assent of the State. I do not dispute that there is substantial evidence to support Applicant's contention that he is intellectually disabled. Indeed, this Court found on direct appeal that, during Applicant's trial, at which he previously raised the issue of intellectual disability,

he had definitively established the first prong of the diagnostic criteria for ID with IQ scores that placed him within that range of limited cognitive ability.[1]

The dispute has previously been whether Applicant had also satisfactorily demonstrated, by a preponderance of the evidence, that he suffers adaptive deficits as required by the second prong of the diagnostic criteria. Applicant's jury was not so satisfied, and on direct appeal this Court rejected his claim that the jury's rejection of the second prong for ID was against the great weight and preponderance of the evidence.[2] We also rejected a *de novo* claim—seemingly on the merits—that he was intellectually disabled when he first raised it in his initial writ application.[3]

Now, in light of some newly developed evidence of adaptive deficits—but, more importantly, given the more recent jurisprudential elaborations upon the United States Supreme Court's Eighth Amendment prohibition against the execution of offenders who suffer from ID, which have come down since Applicant's direct appeal and the filing of his original writ application[4]—the Court's per curiam opinion today re-opens Applicant's

---

[1] *Lizcano v. State*, No. AP-75,879, 2010 WL 1817772, at *12 (Tex. Crim. App. May 5, 2010) (not designated for publication).

[2] *Id*. at *15.

[3] *Ex parte Lizcano*, No. WR-68,348-03, 2015 WL 2085190 (Tex. Crim. App. Apr. 15, 2015) (not designated for publication). *See also id*. at *1 (Alcala, J., dissenting) ("This Court's order determines that applicant's present intellectual-disability claim is not procedurally barred and denies his claim on its merits.").

[4] When we disposed of Applicant's writ application in 2015, we were aware of the United States Supreme Court's opinion in *Hall v. Florida*, 572 U.S. 701 (2014). *See Ex parte Lizcano*, 2015 WL 2085190, at *1 (Alcala, J., dissenting) (citing *Hall*). But neither of the Supreme Court's opinions in the *Moore* case had yet issued. *See Moore v. Texas*, 137 S. Ct. 1039 (2017); *Moore v. Texas*, 139 S. Ct. 666 (2019).

initial writ application and then simply declares Applicant to be constitutionally ineligible for the death penalty.

Were this a case in which ID was being raised by necessity for the first time in post-conviction habeas corpus proceedings, in which this Court is the court of return and principal factfinder, I would concur in that disposition. But this is not such a case. Applicant's trial occurred after *Atkins v. Virginia*, 536 U.S. 304 (2002), was decided, and he raised ID at the punishment phase of trial, where the jury rejected critical facts necessary to establishing the second prong of his Eighth Amendment claim.

In no previous case of which I am aware has the Court substantively addressed the question of what the appropriate disposition ought to be when we find that a jury's trial-level determination of an ID claim was of questionable reliability, either because of the discovery of substantial new facts bearing on the issue, or in light of subsequent Supreme Court jurisprudential development calling into question the criteria that the jury was allowed to consider.[5] May this Court simply re-visit the ID issue *sua sponte* and make a merits determination *de novo*? Or is the proper disposition, instead, to remand the case to

---

[5] In *Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007), the Court held that an applicant could raise an ID claim for the first time in a subsequent post-conviction application for writ of habeas corpus, under Section 5(a)(3) of Article 11.071, but that he would be subject to a heightened threshold, both for review and ultimate relief, than he would be had he raised the issue in an initial writ application. *Id*. at 159–63 (citing TEX. CODE CRIM. PROC. art. 11.071, § 5(a)(3)). But Blue was tried prior to *Atkins* and could not have been expected to raise the issue at trial. Here, the issue was raised and resolved at trial, and the question arises whether a habeas court must afford some degree of deference to that trial-level resolution. *Blue* does not answer that question. In *Ex parte Moreno*, 245 S.W.3d 419 (Tex. Crim. App. 2008), we re-opened an original writ application in the face of "extraordinary circumstances" that made it abundantly apparent that our original disposition of that writ application was "plainly incorrect" under prevailing law. *Id*. at 429. But the relief we granted in *Moreno* was to remand the case for a new punishment hearing. *Id*. at 431. Nothing about *Moreno* counsels that the proper disposition in this case is to conduct a *de novo* review of the ID issue and reform the judgment with respect to punishment accordingly.

the convicting court for, if not an altogether new punishment hearing before a jury,[6] at least another jury determination of the ID issue?[7]

Rather than summarily reforming Applicant's sentence to a term of life without parole, I would file and set the cause to address these substantial unresolved questions, with additional briefing by the parties.[8] Because the Court does not, I respectfully dissent.

FILED:          September 16, 2020
PUBLISH

---

[6] *See* TEX. CODE CRIM. PROC. art. 44.29(c) (authorizing an appellate court in a capital case in which it has found "error affecting punishment only" to "commence a new punishment hearing," with a new jury, without setting aside the initial jury's determination of guilt). Are we here dealing with "error affecting punishment only" in contemplation of (and therefore to be governed by) this provision? Or are we justified in holding the present claim to be an issue that is somehow wholly divorced from the jury's trial-level disposition of the ID issue? If the latter, we might still remand for a new jury determination of the ID issue alone, rather than resolving it ourselves *de novo*, since the rules governing ID issues in Texas are purely a creature of the judiciary. *See* note 7, *post*.

[7] The procedures governing the determination of the ID issue at trial remain wholly court fashioned. Despite our most earnest entreaties, the Texas Legislature has yet to provide any legislative guidance. *See In re Allen*, 462 S.W.3d 47, 53–54 (Tex. Crim. App. 2015) ("In terms of issues surrounding intellectual-disability, we still find ourselves in the same 'interregnum' that existed in 2004. * * * We now make explicit what we before expressed only tacitly: Legislation is required."). In the absence of legislative guidance, perhaps this Court would be free to remand the cause, not for an entirely new punishment proceeding under Article 44.29(c), but for a new jury determination of the ID issue. In any event, given the jury's determination of the ID issue in the first instance, it is not self-evident to me that the appropriate disposition of the present writ application is for this Court to resolve the issue *de novo*.

[8] That the State assents to the relief the Court grants today is of no moment. This Court is not bound by prosecutorial confessions of error, and we must independently evaluate such issues. *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002). Should we hold that a remand is the appropriate remedy and send the case back to the convicting court for a new . . . whatever, the State may always opt not to seek the death penalty at that stage. TEX. PENAL CODE § 12.31(a).