IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. WR-50,791-02






EX PARTE JOHN REYES MATAMOROS, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


IN CAUSE NO. 643410 FROM THE


180TH DISTRICT COURT OF HARRIS COUNTY





 Price, J., filed a dissenting statement in which Johnson, J., joined.


DISSENTING STATEMENT



 On June 13, 2007, we denied post-conviction habeas corpus relief to this applicant, (1)
rejecting his Atkins claim that he cannot be executed consonant with the Eighth Amendment
because he is mentally retarded. (2) While we explicitly adopted some of the recommended
findings of fact and conclusions of law of the convicting court, we expressly declined to
adopt the convicting court's conclusion that the applicant "fails to show by a preponderance
of the evidence that he has significant sub-average general intellectual functioning[.]" (3) Thus,
as the federal district court later acknowledged, "the state habeas court ultimately found in
[that applicant's] favor on this prong." (4) We nevertheless held that the applicant failed to
establish by the requisite level of confidence that "he has sufficient deficiencies in adaptive
functioning for a diagnosis of mental retardation or that there was an onset of mental
retardation during [his] developmental period." (5) 

 The State's expert at the Atkins state habeas writ hearing was Dr. George Denkowski,
a licensed psychologist with experience in diagnosis and treatment of mental retardation. It
was largely on the basis of Dr. Denkowski's input that the convicting court was able to
recommend finding against the applicant with respect to all three of the diagnostic criteria
for mental retardation: general intellectual functioning, adaptive functioning, and onset
before age 18. (6) At the evidentiary hearing, the applicant presented ample evidence, including
expert testimony, that would have served to establish all three prongs of the diagnostic
criteria. Having again reviewed the transcript of the 2006 evidentiary hearing, I, for one,
would readily have found that the applicant demonstrated mental retardation to the requisite
level of confidence--but for Denkowski's contrary testimony. (7)

 Since we rejected the applicant's Atkins claim in 2007, Denkowski's diagnostic
practices have come under considerable professional scrutiny. In April of last year, he
entered into a settlement agreement, in proceedings that were brought against him by the
Texas State Board of Examiners of Psychologists with the State Office of Administrative
Hearings, in which he agreed to discontinue forensic evaluations for mental retardation in
Atkins cases. (8) The applicant subsequently sought reconsideration in this Court of the denial
of relief in view of the settlement agreement. While the Texas Rules of Appellate Procedure
do not contemplate the filing of a motion for rehearing following the denial of a post-conviction application for writ of habeas corpus, (9) we are authorized to revisit final judgments
in such matters on our own motion, under extraordinary circumstances. (10) We did so in this
case, remanding the cause to the convicting court "to allow it the opportunity to re-evaluate
its initial findings, conclusions, and recommendation in light of the Denkowski Settlement
Agreement." (11)

 Our remand order invited the convicting court to "order affidavits or hold a live
hearing if warranted." (12) Accordingly, the applicant offered new affidavits and requested a
hearing. The convicting court made no ruling on these matters. (13) Instead, the convicting
court simply signed a revised version of the original findings of fact and conclusions of law
that was proposed by the State, and announced in open court, at a hearing on March 30, 2012,
that it had "totally discounted and did not consider anything in the records provided by Dr.
George Denkowski in this matter." Although counsel for the applicant called his new
affidavits to the trial court's attention, they are not mentioned in the revised findings and
conclusions that the trial court has now recommended to us. As in the recent case of Ex parte
Butler, (14) the process by which these new recommended findings and conclusions were made
does not inspire confidence. Contrary to the convicting court, I believe that the applicant has
made a fairly compelling showing of mental retardation, and I would not reject his claim
without first remanding the cause to the convicting court for additional fact development.

 General Intellectual Functioning: With respect to the first prong of the diagnostic
criteria for mental retardation, the convicting court acknowledges that this Court has already
determined that the applicant has satisfied this prong. I need say no more about it here.

 Adaptive Deficits: In Ex parte Briseno, (15) we recognized the definition of "limitations
in adaptive functioning" that was endorsed by the American Association on Mental
Retardation (AAMR, now the American Association on Intellectual and Developmental
Disabilities, or AAIDD), viz: "Impairments in adaptive behavior are defined as significant
limitations in an individual's effectiveness in meeting the standards of maturation, learning,
personal independence, and/or social responsibility that are expected for his or her age level
and cultural group, as determined by clinical assessment and, usually, standardized scales." (16) 
In Atkins, the definition of adaptive deficits noted by the Supreme Court specifically
recognized the clinical criteria for measuring adaptive deficits that were developed by the
AAMR: "limitations in two or more of the following applicable adaptive skill areas:
communication, self-care, home living, social skills, community use, self-direction, health
and safety, functional academics, leisure, and work." (17) Limitations in adaptive behavior can
be determined using standardized tests such as the Vineland Adaptive Behavior Scales
(Vineland) or the Adaptive Behavior Assessment System (ABAS). (18)

 The applicant's expert at the 2006 writ hearing, Dr. Susana Rosin, testified that she
found sufficient limitations in his adaptive behavior, utilizing the Vineland, to justify a
diagnosis of mental retardation, but the convicting court disregarded her results because she
admittedly did not follow proper protocol in administering the test. Denkowski administered
the ABAS to the applicant, obtaining scores in at least four of the above adaptive skill areas
that would indicate clinically recognizable deficits. And Denkowski even conceded that the
applicant demonstrated a deficit in one of these adaptive skill areas, functional academics. 
He testified, however, that the applicant's scores in the remaining areas were not true
indicators of his genuine abilities, based upon, inter alia, information he gleaned from the
applicant's Texas Youth Commission (TYC) records. For this reason, Denkowski adjusted
these scores upward, allowing him to testify that the applicant ultimately did not satisfy the
diagnostic criteria for mental retardation. The convicting court's original findings regarding
this prong, which we adopted in 2007, relied heavily on this testimony. The applicant now
contends that Denkowski artificially inflated the ABAS scores using professionally
unacceptable criteria, especially the TYC records. He bases this contention upon an affidavit
recently provided by Dr. Thomas Oakland, a psychologist and co-author of the ABAS.

 Onset Before 18: At the 2006 writ hearing, the applicant introduced the report of a
psychologist, Dr. Ronald Smith, who diagnosed the applicant as suffering from mental
retardation as early as 1977, when he was fourteen years old. Rosin relied upon Smith's
report to conclude that the applicant's mental retardation preceded his eighteenth birthday. 
Denkowski testified, however, that Smith's diagnosis was invalid because, insofar as
Denkowski could tell from his report, he failed to conduct any assessment of the applicant's
adaptive deficits at that time. The applicant now proffers a signed but unsworn affidavit
from Dr. Jack M. Fletcher, a psychology professor, opining that Dr. Smith's "assessment was
consistent with diagnostic practices in 1977." Dr. Oakland's affidavit echoes this view,
maintaining that, in 1977, "the diagnosis of mental retardation did not require the use of a
measure of adaptive behavior. The absence of this information should not invalidate an
otherwise legitimate diagnosis of mental retardation." In my view, Smith's diagnosis should
count as proof by a preponderance of the evidence that, if the applicant indeed has suffered
from mental retardation, he has done so since before he turned 18.

 Convicting Court's Revised Findings of Fact and Conclusions of Law. The new
recommended findings and conclusions appropriately recognize "that deficits exist in
adaptive behavior when an individual has significant limitations in at least two of the ten skill
areas or when an individual's composite score from an adaptive behavior instrument is 70
or below." (19) Even after Denkowski adjusted the applicant's scores on the ABAS, the
applicant's composite score was still below 70. Denkowski nevertheless persisted in his
opinion that the applicant demonstrated insufficient adaptive deficits to justify a
classification as mentally retarded. Dr. Oakland now criticizes Denkowski's reliance upon
the TYC records as an authoritative source of adaptive-deficit information:

 Dr. Denkowski relies on evidence from the Texas Youth Commission (TYC) to
conclude Mr. Matamoros's adaptive skills are normal. He cites evidence that his
adaptive skills increased following TYC interventions. His belief overlooks the fact
that adaptive behavior cannot be assessed validly when persons are incarcerated or
otherwise confined. Moreover, the TYC did not use norm referenced measures to
assess adaptive behavior.


 The [Diagnostic and Statistical Manual] and other authoritative sources describe
adaptive behavior or functioning as the effectiveness of the individual to cope with
common life demands and how well they meet the standards of personal
independence. Life when incarcerated, by design, differs considerably from life on
the outside. Life on the outside has more common life demands, is more complex,
and more reliant on one knowing what to do, when, and under what conditions.


 Additionally, when incarcerated under TYC regulations, youth are less able to display
personal independence and instead must follow externally imposed rules and
regulations. Behaviors displayed when incarcerated may not be displayed on the
outside. There is no evidence that adaptive behaviors Mr. Matamoros seemingly
developed while in the TYC facilities transferred to the outside. High rates of
recidivism demonstrate this fact for the general population and may apply to Mr.
Matamoros.


The convicting court's new recommendations do not address these criticisms.

 Instead, the convicting court simply recommends that we find that any problem
stemming from Denkowski's testimony is obviated by the fact that the same conclusions may
safely be reached even if we discount Denkowski's input, including the scores he obtained
from his administration of the ABAS. The proposed findings and conclusions go to great
lengths to point out that the federal district court held that, even absent Denkowski's
testimony at the 2006 writ hearing, there is evidence--particularly, the TYC records
themselves--that still supports a finding that the applicant failed to demonstrate a second
area of adaptive deficits necessary to support a diagnosis of mental retardation. (20) This
apparently explains why the convicting court saw no need for further fact development.

 I am unpersuaded. Under the Antiterrorism and Effective Death Penalty Act, (21) the
federal courts are required to pay almost insurmountable deference to our fact and credibility
determinations. They have no choice. In remanding this case to the convicting court,
however, we did not ask for a determination whether it would still be appropriate for this
Court to defer to our original findings and conclusions, as the federal court was obliged to
do--essentially, deference stacked upon deference. Given Denkowski's settlement
agreement, and the substantial criticisms of his diagnostic methodology, as evidenced by the
affidavits the applicant has lately tendered, questions abound. For example, even taking
Denkowski's testimony out of the mix, is it appropriate for this Court--the ultimate arbiter
of the applicant's mental retardation--to rely on the TYC records as evidence that the
applicant suffers no adaptive deficits outside the realm of functional academics, considering
(as the convicting court apparently did not) Dr. Oakland's criticisms? I would at least
remand this cause to the convicting court for further factual development and a
recommendation of what findings of fact and conclusions we should come to now--not a
facile judgment whether we can safely continue to defer to the findings and conclusions we
made back in 2007.

 Because the Court does not, I dissent.


FILED: October 3, 2012

DO NOT PUBLISH
1. Ex parte Matamoros, No. WR-50,791-02, 2007 WL 1707193 (Tex. Crim. App., delivered
June 13, 2007) (not designated for publication).
2. Atkins v. Virginia, 536 U.S. 304 (2002).
3. Ex parte Matamoros, supra, at *1.
4. Matamoros v. Thaler, No. H-07-2613, 2010 WL 1404368, at *5 (S.D. Tex., March 31, 2010)
(not designated for publication).
5. Ex parte Matamoros, supra.
6. E.g., Ex parte Hearn, 310 S.W.3d 424, 428 (Tex. Crim. App. 2010).
7. In the context of post-conviction habeas corpus, the convicting court is the "original" fact-finder, and we ordinarily pay great deference to that court's findings of fact and conclusions of law
when supported by the record. But that deference is not boundless, and we do not simply rubber-stamp the convicting court's recommendations. This Court is the "ultimate" fact-finder, with the
prerogative to reject the convicting court's recommendations on those rare occasions when we deem
it appropriate, even when they are supported by the record, if we think another disposition is
manifestly better supported by the record. Ex parte Spencer, 337 S.W.3d 869, 879-80 n.1 (Tex.
Crim. App. 2011) (Price, J., concurring); Ex parte Robbins, 360 S.W.3d 446, 467 n.14 (Tex. Crim.
App. 2011) (Price, J., concurring).
8. See Maldonado v. Thaler, 625 F.3d 229, 234 (5th Cir. 2010) (noting the proceedings brought
against Denkowski in the State Office of Administrative Hearings); Pierce v. Thaler, 604 F.3d 197,
213 (5th Cir. 2010) (noting that this Court had recently found Denkowski's credibility to be lacking
in Ex parte Plata, No. AP-75,820, 2008 WL 151296 (Tex. Crim. App., delivered Jan. 16, 2008) (not
designated for publication)).
9. Tex. R. App. P. 79.2(d).
10. Ex parte Moreno, 245 S.W.3d 419, 427-29 (Tex. Crim. App. 2008).
11. Ex parte Matamoros, No. WR-50,791-02, 2011 WL 6241295, at *1 (Tex. Crim. App.,
delivered Dec. 14, 2011) (not designated for publication).
12. Id.
13. The current judge of the 180th Judicial District Court is different than the judge who presided
over that court in 2006 when the applicant's initial writ hearing occurred.
14. Ex parte Butler, No. 41,121-02, 2012 WL 2400634, at *12 (Tex. Crim. App., delivered June
27, 2012) (not designated for publication). 
15. 135 S.W.3d 1 (Tex. Crim. App. 2004).
16. Id. at 7 & n.25.
17. Atkins, supra, at 309 n.3 (citing the AAMR publication, Mental Retardation: Definition,
Classification, and Systems of Support 5 (9th ed. 1992)). In 2002, in its tenth edition of this
publication, the AAMR modified the criteria somewhat, consolidating some of the skill areas and
requiring significant limitations in only one of the three to justify a diagnosis of mental retardation. 
See AAMR, Mental Retardation: Definition, Classification, and Systems of Support 20-23 (10th ed.
2002). These various definitions, "while following developments in consensus in the clinical field,
have retained a consistent core meaning." John H. Blume, Sheri Lynn Johnson and Christopher
Seeds, Of Atkins and Men: Deviations from Clinical Definitions of Mental Retardation in Death
Penalty Cases, 18 Cornell J. L. & Pub. Pol'y 689, 696 n. 28 (Summer 2009).
18. Ex parte Hearn, supra, at 428 & n.10.
19. State's Amended Proposed Findings of Fact, Conclusions of Law at 13, #60.
20. See Matamoros v. Thaler, supra, at *15 (finding that our original findings and conclusions
were "reasonable" even disregarding Denkowski's testimony--while nevertheless pointing to
information in the TYC records to support our original conclusion that the applicant "does not have
significant deficits in the other areas of adaptive behavior" besides functional academics).
21. See 28 U.S.C. § 2254(d)(2) (federal habeas petition "shall not be granted" unless state court
adjudication of the claim "was based on an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding").