WR-42,639-03
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/22/2015 3:06:23 PM
Accepted 1/22/2015 3:17:05 PM
ABEL ACOSTA
CLERK

**WR-42,639-03 / 114-80305-97-C**

| | | |
|---|---|---|
| EX PARTE | § | IN THE COURT OF RECEIVED COURT OF CRIMINAL APPEALS 1/22/2015 ABEL ACOSTA, CLERK |
| | § | |
| | § | CRIMINAL APPEALS |
| | § | |
| ROBERT CHARLES LADD | § | AUSTIN, TEXAS |

## STATE'S MOTION TO DISMISS APPLICATION FOR WRIT OF HABEAS CORPUS AND DENY REQUEST FOR STAY OF EXECUTION

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Respondent, the State of Texas, by and through its Assistant Criminal District Attorney for Smith County, files this, its Motion requesting that the Court of Criminal Appeals dismiss this application for writ of habeas corpus and deny his request for stay of execution. Applicant does not satisfy the requirements for the filing of a subsequent writ application under TEX. CODE CRIM. PROC. ANN. Art. 11.071, § 5, and, alternatively, Applicant's ground for relief is meritless. In support, Respondent would show the following:

### I. PROCEDURAL HISTORY

In 1978, Applicant was convicted of murdering a young mother and her two small children and setting fire to their house. He was sentenced to 40 years in prison, but was released after 16 years. *See Ladd v. Thaler*, 2013 U.S. Dist. LEXIS 21614 (E.D. Tex. Feb. 15, 2013). In 1996, and while on parole from his first murder

conviction, Applicant raped and killed Ms. Vicki Garner, a young mentally impaired woman with whom he worked, and set fire to her apartment. Applicant was subsequently indicted for capital murder, the killing having taken place during the commission of burglary, robbery, sexual assault and arson. In August of 1997, a jury convicted Applicant of capital murder and imposed the death penalty. His conviction and sentence were subsequently affirmed on October 6, 1999. *Ladd v. Texas*, 3 S.W.3d 547, 556 (Tex.Crim.App. 1999). Applicant's petition for a writ of certiorari from this decision was later denied on April 17, 2000.

On August 13, 1999, Applicant filed with the Court of Criminal Appeals his first application for habeas relief under Art. 11.071 of the Code of Criminal Procedure. This Court denied relief in this application on December 15, 1999. *Ex Parte Ladd*, No. 42,639-01 (Tex.Crim.App. 1999).

Applicant then filed his first application for federal habeas relief on January 18, 2001, which was later denied. The 5th Circuit subsequently affirmed that denial. *Ladd v. Cockrell*, 311 F.3d 349, 360 (5th Cir. 2002).

Following the Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed. 2d 335 (2002), Applicant filed his second Art. 11.071 application on April 7, 2003, arguing that he was categorically excluded from the death penalty because of mental retardation. This Court considered the record and

2

application and then dismissed it as a successive writ on April 17, 2003. *Ex Parte Ladd*, No. WR-42,639-02 (Tex.Crim.App. 2003).

Applicant thereafter sought and received authorization from the 5th Circuit Court of Appeals to file a second application for habeas relief in the federal district court. His second application was filed in the Untied States District Court for the Eastern District of Texas on June 20, 2003, and again raised an *Atkins* claim. On June 27, 2005, Applicant, with appointed counsel, was afforded a full evidentiary hearing on his *Atkins* claim in the United States District Court sitting in Beaumont, Texas.

The District Court carefully considered the evidence and then rejected Applicant's argument that he suffered from an intellectual disability (mental retardation). *Ladd v. Thaler*, 2013 U.S. Dist. LEXIS 21614 (E.D. Tex., Feb. 15, 2013). The 5th Circuit Court of Appeals subsequently affirmed the decision of the District Court on April 8, 2014. *Ladd v. Stephens*, 748 F.3d 637 (5th Cir. Tex. 2014).

On October 6, 2014, Applicant's petition for a writ of certiorari to the Untied States Supreme Court was thereafter denied. *Ladd v. Stephens*, 2014 U.S. LEXIS 5311 (U.S., Oct. 6, 2014).

## II. FACTS OF THE CASE

As discussed earlier, this Court affirmed Applicant's conviction and sentence on direct appeal. *Ladd v. State*, 3 S.W.3d 547, 556 (Tex.Crim.App. 1999). In its

3

opinion, the Court summarized the guilt/innocence evidence as follows:

> Early on the evening of September 24, 1996, Vicki Ann Garner entertained a friend at Garner's residence in Tyler. The friend left around 8:15 p.m. Sometime between 9:00 p.m. and 10:00 p.m. that same evening, appellant met with John T. Robertson at Robertson's residence in Tyler. Robertson's residence was located less than one mile from Garner's residence. Appellant gave Robertson several small household appliances and other items in exchange for five "rocks" of "crack" cocaine. One of the appliances was an RCA-brand television-videocassette recorder (TV-VCR), serial number 619320052.
>
> At around 6:45 a.m. the next morning, the Tyler Fire Department received a telephone call reporting a fire at Garner's residence. Tyler firemen responded immediately and arrived at the residence a few minutes later. The firemen forced open the front and back doors to the residence, which had been locked, and entered. Once inside, they found much smoke but little fire. They also found Garner's body in a bedroom. She was positioned face down on the floor, naked below the waist, her head and body battered and partially burned, her hands tied together with a cord. There was also a belt around her neck and ligature marks on her ankles. The residence itself appeared to have been ransacked, and the fire appeared to have been deliberately set.
>
> A subsequent search of the residence by Tyler police revealed, among other things, an instruction manual for an RCA-brand TV-VCR. The serial number of the appliance was noted on the instruction manual as 619320052. The police also found a palm print matching appellant's on a kitchen cabinet.
>
> An autopsy of Garner's body revealed that she died from manual strangulation. The autopsy also revealed the presence of spermatozoa in her vagina. Tests on that sperm revealed DNA (footnote omitted) with characteristics that, in many respects, paralleled the characteristics of appellant's DNA. Such a DNA "match" could be expected from only one male in 170,000.

*Ladd*, 3 S.W.3d at 556.

## II.   APPLICANT HAS AN EXECUTION DATE SET FOR JANUARY 29, 2015

On December 1, 2014, the 114th District Court of Smith County, Texas issued an order setting an execution date in this case for January 29, 2015.

## III.   APPLICANT'S THIRD ART. 11.071 WRIT APPLICATION

On January 21, 2015, Applicant filed his third Art. 11.071 application for habeas relief under the above-numbered cause and again argues that he is entitled to relief because he is intellectually disabled (mentally retarded) under the holding of *Atkins, supra.* However, Applicant has failed to show that he is entitled to consideration of this successive writ application where his *Atkins* claim was previously rejected by this Court when it dismissed his second Art. 11.071 writ application. *Ex Parte Ladd*, No. WR-42,639-02 (Tex.Crim.App. 2003).

More importantly, Applicant was provided court-appointed counsel and granted an evidentiary hearing on his *Atkins* claim in the United States District Court for the Eastern District of Texas. After a full hearing, which included mental health expert testimony, that Court rejected Applicant's argument that his execution is categorically precluded due to an alleged intellectual disability. *Ladd v. Thaler*, 2013 U.S. Dist. LEXIS 21614 (E.D. Tex., Feb. 15, 2013). The 5th Circuit Court of Appeals subsequently affirmed the decision of the District Court on April 8, 2014. *Ladd v. Stephens*, 748 F.3d 637 (5th Cir. Tex. 2014). On October 6, 2014, Applicant's petition

5

for a writ of certiorari to the Untied States Supreme Court was thereafter denied. *Ladd v. Stephens*, 2014 U.S. LEXIS 5311 (U.S., Oct. 6, 2014).

In denying federal habeas relief on Applicant's *Atkins* claim, the District Court expressly held that:

> To establish that he is mentally retarded, Ladd was required to establish by a preponderance of the evidence that he has significantly sub-average intellectual functioning, that he has deficits in at least two adaptive skill areas which are both significant and related to his sub-average intelligence, and that his sub-average intellectual functioning and adaptive skills deficits manifested before his 18trh birthday. Because Ladd has failed to establish by a preponderance of the evidence the existence of two significant deficits in adaptive behavior which were both statistically significant and related to his sub-average intellectual functioning, the court finds that he has not established that he is mentally retarded. Ladd's application for a writ of habeas corpus (document #8) is DENIED with prejudice and the Director's motion for judgment denying habeas corpus relief with prejudice (document #89) is GRANTED.

> *Ladd v. Thaler*, 2013 U.S. Dist. LEXIS 21614 at 34-35.

In this current application, Applicant argues that this Court should grant relief because this Court's holding in *Ex parte Briseno*, 135 S.W.3d 1 (Tex.Crim.App. 2004), is utilized in an unconstitutional manner as it relates to the determination of deficits in adaptive functioning as the second prong under the intellectual disability definition. (Writ App. at 9-21). This is specifically denied where the U.S. District Court, which heard testimony from several mental health experts and considered all

6

of the proof offered at the *Atkins* evidentiary hearing, and did not rely in any manner upon the factors listed in *Ex parte Briseno* in denying relief.

The District Court instead expressly based its decision upon the definition of "intellectual disability" that is used by the American Association of Mental Retardation, which is now known as the American Association for Intellectual and Developmental Disabilities (AAIDD). *Ladd v. Thaler*, 2013 U.S. Dist. LEXIS 21614 at 7 ("Because the state courts did not provide Ladd a hearing, the court will determine *de novo* whether Ladd is mentally retarded, using the AAIDD definition of mental retardation."). Applicant completely ignores this very important fact in boldly asserting now that the "only" evaluation of his *Atkins* claim was under the "faulty standard" of *Ex parte Briseno*. (Writ App. at 15).

The 5th Circuit Court of Appeals affirmed the decision of the U.S. District Court after finding that the lower court, as fact finder, was in the best position to make a determination of the conflicting expert testimony at the "extensive" evidentiary hearing. *Ladd v. Stephens*, 748 F.3d at 647 (". . . the district court is in the better position to reach such a conclusion, and that such a conclusion can be supported by the evidence, we find the district court's determination plausible and thus survives clear error review."). Applicant argues that "the Fifth Circuit "specifically relied on the Briseno factors" in affirming the District Court's decision.

(Writ App. at 15). However, this is an absolutely false assertion where the U.S. District Court expressly stated that it was making its determination of Applicant's mental capacity "using the AAIDD definition of mental retardation." *Ladd v. Thaler*, 2013 U.S. Dist. LEXIS 21614 at 7. And also because the 5th Circuit's opinion does not even mention the seven factors proffered by this Court in *Ex parte Briseno*, much less "specifically rel[y]" upon them. *See Ladd v. Stephens*, 748 F.3d at 645-47.[1]

Respondent understands that this is a last-minute effort to forestall Applicant's pending execution, however, such circumstances would seem to call for an honest discussion of the record and not deliberate attempts to mislead the Court.

1.    **Applicant has previously raised an *Atkins* claim in both State and federal courts and this Court should deny him a third chance to do so.**

Applicant clearly seeks a third bite at the apple and is requesting this Court to remand the matter for yet another chance to litigate the issue of his mental capacity. Applicant's second round of federal habeas filings was over upon the denied of his petition for certiorari by the Supreme Court in October of last year. *Ladd v. Stephens*, 2014 U.S. LEXIS 5311 (U.S., Oct. 6, 2014). There is also no question but that the opinions in both *Atkins* and *Ex parte Briseno* are both over a decade old. As this Court has stated in the past, "[i]n Texas habeas corpus law, as in federal law, 'equity

_____

[1] *See also Ex parte Briseno*, 135 S.W.3d 1, 8 (Tex.Crim.App. 2004).

is not intended for those who sleep on their rights.'" *Ex parte Steptoe*, 132 S.W.3d 434, 439-440 (Tex.Crim.App. 2004). Not only has Applicant had a full evidentiary hearing on the issue under what he now argues is the applicable standard, he has waited over three months only to file this third and subsequent habeas application in the last days before his execution.

State and federal courts share concurrent habeas corpus jurisdiction to review the constitutional legitimacy of a conviction or death sentence obtained in State court. As this Court has often noted, the abstention doctrine in both federal and state courts and the exhaustion doctrine in federal courts, "complement each other and are designed to achieve the jurisprudential goals of comity, efficiency, and expediency." *See e.g.*, Ex *parte Soffar*, 120 S.W.3d 344, 346 (Tex.Crim.App. 2003). "On the whole, they work well to give state prisoner habeas applicants one, and only one, full and fair opportunity to litigate constitutional claims sequentially, first in state court and, if relief is denied there, then in federal court." *Id*.

In this case, Applicant has unsuccessfully raised his *Atkins* allegation in this Court under his second Art. 11.071 application, and also in the United States District Court with his second federal habeas application. He has thus had his "full and fair opportunity to litigate constitutional claims." Even if comity or the possibility of inconsistent results are not implicated at this juncture, judicial economy and the

9

avoidance of piecemeal litigation remain legitimate concerns that should "counsel against disturbing [the Court's] initial disposition, absent compelling circumstances." *Ex parte Moreno*, 245 S.W.3d 419, 428 (Tex.Crim.App. 2008). As this Court further stated in *Ex parte Moreno*:

> We should and will be extremely hesitant ever to exercise our authority to reconsider a decision on an initial post-conviction habeas corpus application, particularly after the passage of a substantial number of years. In almost every instance, the State's legitimate interest in the repose and finality of its convictions - even its interest in punishment as weighty and irrevocable as the death penalty - will be substantial indeed and ought not to be disturbed, even in the face of a reasonable and good faith argument that our disposition on original submission was "incorrect."

> *Id.*

Applicant unquestionably committed the horrendous rape and murder of Ms. Vicki Garner in September of **1996**. Since that time, he has been convicted by a jury and had that conviction affirmed on direct appeal. He thereafter unsuccessfully urged *Atkins*-related grounds in several successive writ applications in both State and federal courts. There is nothing in the current writ application that demonstrates that there are now "compelling circumstances" which would mandate the re-litigation of Applicant's *Atkins* claims.[2]

---

[2] Ironically, if this Court were to grant Applicant another *Atkins* hearing, it would necessarily be conducted under this Court's decision in *Ex parte Briseno* absent an intervening decision by this Court to remove that case from the jurisprudence of this State.

10

In a situation somewhat similar to the instant case, this Court ruled that it was not necessary to order an evidentiary hearing on an *Atkins* claim raised for the first time in an habeas application where the applicant had already had the "opportunity to fully develop the pertinent facts" in the punishment phase of his trial. *See Ex parte Simpson*, 136 S.W.3d 660, 663 (Tex.Crim.App. 2004). Like the parties in *Ex parte Simpson*, both sides in this case had a previous opportunity to fully develop a record of the pertinent facts at the *Atkins* hearing held in the U.S. District Court, and that court likewise had an opportunity to assess the credibility and demeanor of the witnesses when it presided over the hearing.

Applicant has not alleged that there is newly available evidence that was not presented at his *Atkins* hearing that would result in a different holding than those already entered by the several courts that have already considered the issue of his mental capacity to be executed. He has merely, and incorrectly, argued that this Court's decision in *Ex parte Briseno* was improperly applied when the U.S. District Court denied him relief on his *Atkins* claim. This is clearly insufficient to support consideration of this subsequent habeas application.

## 2. Applicant has not met his Burden of Proof

This is a third and subsequent writ application, which falls under the prohibition found in Article 11.071 of the Code of Criminal Procedure, which states

in its pertinent parts that:

> If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> > (1) the current claims and issues **have not been** and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; (emphasis supplied)
> >
> > (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
> >
> > (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

TEX. CODE CRIM. PRO. ANN. Art. 11.071, Sec. 5 (a) (Vernon 2015)

Thus, under the plain language of this statute, once Applicant filed his original application under this criminal cause number, all subsequent applications regarding the same conviction must meet the conditions set forth in Art. 11.071. This Court has previously determined that this subsection of Art. 11.071 was intended "to limit a convicted person to 'one bite at the apple.'" *See Ex parte Torres*, 943 S.W.2d 469,

12

474 (Tex.Crim.App. 1997) (discussing legislative history common to the subsequent application provisions in both Arts. 11.07 and 11.071).

It is submitted that Applicant has not made the requisite preliminary showing for consideration of his subsequent writ application. Particularly where the claim he now presents has been previously considered and rejected by this Court. *See* TEX. CODE CRIM. PRO. ANN. Art. 11.071, Sec. 5 (a) (1) (Vernon 2015). Applicant has also failed to show any reason why this Court should grant him at the last minute the privilege of yet another review of an allegation which has been repeatedly rejected by *every* court in which it has been raised.

Finally, since his conviction in 1997 Applicant has had several opportunities in both State and federal court to challenge the propriety of his conviction and sentence. *See Ladd v. Stephens*, 748 F.3d 637, 639-42 (5th Cir. Tex. 2014). The undersigned has personal knowledge that Ms. Garner's family has patiently waited for justice for over eighteen years as this case worked its way through the appellate and habeas processes. They must understandably have little faith in a criminal justice system that released a convicted triple murderer before he served even half of the sentence previously assessed only to have him brutally rape and murder Ms. Vicki Garner while out on parole. Applicant has had much more than his day in court. His rights have been scrupulously protected both at trial and in his many post-conviction

13

proceedings. His current writ application offers nothing that has not been already been found to be without merit several times over. Applicant has had his time. Most respectfully, it is now time for justice for Ms. Vicki Garner.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Respondent respectfully requests that the Court of Criminal Appeals dismiss the applicant's instant original application for writ of habeas corpus and/or deny the applicant habeas relief as well as deny the applicant's request for stay of execution.

Respectfully submitted,

D. MATT BINGHAM
Criminal District Attorney
Smith County, Texas

Michael J. West
Asst. Criminal District Attorney
SBOT# 21203300
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)
mwest@smith-county.com

14

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4, the undersigned attorney certifies that the word count for this document is 2,403 words as calculated by Corel WordPerfect X6.

_____
Michael J. West

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the MOTION TO DISMISS APPLICATION FOR WRIT OF HABEAS CORPUS AND DENY REQUEST FOR STAY OF EXECUTION was electronically served on the attorney for Applicant, Mr. Brian Stull, 201 W. Main Street, Ste. 402, Durham, NC, 27701, at bstull@aclu.org.

_____
Michael J. West