

# In the Court of Criminal Appeals of Texas

Nos. WR-41,654-05 & WR-41,654-07

## EX PARTE WALTER ROY, A/K/A, EDDIE DWAYNE MOORE,

*Applicant*

On Applications for Writs of Habeas Corpus
Cause Nos. C-2-W011756-0606216-C & C-2-W011938-0606216-D
in Criminal District Court No. 2
from Tarrant County

YEARY, J., filed a concurring and dissenting opinion in which SLAUGHTER, J., joined.

Applicant was convicted in 1998 of two counts of attempted murder and two counts of engaging in organized criminal activity, and he received three twenty-year sentences and one life sentence, to be served concurrently. His initial post-conviction application for writ of

habeas corpus was denied in 2001. This Court later dismissed his first subsequent writ application in 2006. On May 26, 2020, he filed a second subsequent writ application—the -05 writ application—in which he argued only that he was "actually innocent" of the offenses on the basis of new evidence that strongly tends to show he was not the actual shooter during the incident in question.[1]

Applicant did not, in his -05 writ (his second subsequent writ), also claim that this same new evidence—that he was not the shooter— also adversely affected him at the punishment phase of his trial. He failed to raise that separate claim in his -05 writ application even though, on May 11, 2020, two weeks before he filed it, the Conviction Integrity Unit [CIU] of the Tarrant County District Attorney's Office presented this new not-the-shooter evidence in a letter to the Texas Board of Pardons and Paroles on his behalf. In the letter, on the basis of the new evidence that Applicant was not the actual shooter, the CIU recommended that Applicant's life sentence be commuted to time served (Applicant having already discharged his three twenty-year sentences). This recommendation to the Board was endorsed by the relevant local

---

[1] "Actual innocence" is but a shorthand description of a claim that a habeas applicant has discovered new evidence that, by clear and convincing evidence, would have caused a jury to acquit him had it been presented at the time of trial. *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). Although I do not object to granting qualified applicants relief on that basis, I have elsewhere registered my objection to describing a claim under *Elizondo* as a claim of "actual innocence." *Ex parte Casey*, 543 S.W.3d 802 (Tex. Crim. App. 2016) (Yeary, J., concurring); *Ex parte Chaney*, 563 S.W.3d 239, 286–89 (Tex. Crim. App. 2018) (Yeary, J., concurring). I will not revisit those objections here. In any event, this Court denied relief on Applicant's "actual innocence" claim because his new evidence did not rule out his culpability as a party to the crimes.

officials—the District Attorney, the Tarrant County Sheriff, and the presiding judge of the convicting court. 37 TEX. ADMIN. CODE §§ 141.111(49), 143.51, 143.52. Even so, when Applicant filed his -05 writ application, on May 26, 2020, he failed to raise a claim that the same false evidence that he was the actual shooter had also infected the punishment phase of his trial—notwithstanding the action of the CIU in pursuing a commutation of sentence for him.

In August of 2020, the Board did recommend that the Governor commute Applicant's life sentence. But in January of 2021, the Governor refused to follow the Board's recommendation. Applicant's life sentence therefore remains in effect.

Two months later, on March 10, 2021, this Court dismissed Applicant's second subsequent (-05) writ application. Then, two weeks after this adverse disposition, on March 23, 2021, Applicant filed a pleading styled "Suggestion for Reconsideration."[2] It was in this pleading that Applicant argued for the first time that the false evidence showing that he was the actual shooter was considered at the punishment phase of his trial, and that he was harmed because the trial court had purportedly relied on his refusal to take responsibility for the shooting in assessing his punishment.

On May 5, 2021, this Court denied Applicant's "Suggestion for Reconsideration" of our dismissal of his -05 writ application—and rightly so. A non-capital habeas applicant may amend or supplement his

---

[2] Rule 79.2(d) of the Texas Rules of Appellate Procedure prohibits applicants from filing motions for rehearing following the issuance of an order denying relief or dismissing the writ application. TEX. R. APP. P. 79.2(d). But "[t]he Court may on its own initiative reconsider the case." *Id*.

writ application at any time before this Court disposes of it, the Court has said, but not thereafter. *See Ex parte Saenz*, 491 S.W.3d 819, 825 (Tex. Crim. App. 2016) ("[T]he plain language of Article 11.07 permits this Court's consideration of amended or supplemental claims filed by an applicant before final disposition of an application[.]").

On March 23, 2021—the same day Applicant filed his ill-fated "Suggestion to Reconsider" his -05 writ application—Applicant also filed yet another subsequent (-07) writ application in which he also attempted to raise his new false-evidence-at-the-punishment-phase issue.[3] The Court today dismisses the -07 writ application without written order. This would also seem to be the correct disposition, because Applicant plainly could have raised this claim in his -05 writ application and his new evidence does not establish that he could not rationally be found guilty of the offenses for which he was convicted. *See* TEX. CODE CRIM. PROC. art. 11.07, §§ 4(a)(1), 4(a)(2) (permitting a court to address the merits of a claim brought in a subsequent writ application *only* if the claim was previously unavailable (either legally or factually), or if, "but for a violation of the United States Constitution[,] no rational juror could have found the applicant guilty beyond a reasonable doubt").[4]

---

[3] In between the -05 writ application and the -07 writ application, Applicant filed a pro se subsequent writ application (-06) which this Court later dismissed without prejudice on the motion of his -07 subsequent writ counsel.

[4] An amicus curiae brief has been filed in support of the Court's granting relief in Applicant's -07 subsequent writ application. This brief argues that we should construe Section 4 of Article 11.07 in such a way as to allow the State to waive the subsequent writ limitations contained therein. But this is an argument for granting relief on the basis of Applicant's -07 writ application, of course, not his -05 writ application, as the Court does today. In dismissing Applicant's -07 writ application, the Court has either implicitly rejected

But then, in a separate written (albeit unpublished) opinion, the Court today also (and inexplicably) re-opens Applicant's -05 writ application. It does so completely *sua sponte*—notwithstanding its refusal to do so less than a year ago. And then, without elaboration, it grants Applicant a new punishment trial. I dissent to this failure to abide by the subsequent writ limitations of Article 11.07, Section 4.

To be sure, this Court has said that it has the authority to re-open a previously denied writ application. *Ex parte Moreno,* 245 S.W.3d 419, 427–28 (Tex. Crim. App. 2008). But it has done so only rarely—and rightly so, given that the Court has also said that it would exercise that authority only under the most extraordinarily compelling of circumstances to disturb the repose of an earlier habeas disposition. *See id.* at 429 (recognizing the Court's authority to re-open previously resolved writ applications on its own motion, while observing even so that it would do so only under "compelling circumstances" because ordinarily "the repose and finality of . . . convictions . . . ought not to be disturbed, even in the face of a reasonable and good faith argument that our disposition on original submission was incorrect"); *see also Ex parte Robertson,* 603 S.W.3d 427, 428 (Tex. Crim. App. 2020) (describing the re-opening of an earlier disposed-of writ application as "an 'unusual' measure that we undertake only under extraordinary circumstances"). In its opinion granting relief today in the -05 writ application, the Court does not even try to describe what circumstances might justify a reversal of its decision from just last year, much less demonstrate how those

---

amicus's arguments, or simply ignored them. While I am dubious of those arguments, I need not address them today.

circumstances could be regarded as compellingly extraordinary.

And they are not. Applicant could and should have raised this claim—namely, that his punishment was adversely influenced by false evidence that he was the shooter (and not just a party to the shooting)—before, in his -05 writ application, but he did not. Applicant's counsel explained in the context of last year's "Suggestion for Reconsideration" of our initial disposition of the -05 writ application that he did not raise this claim earlier because he mistakenly believed Applicant would obtain executive-clemency relief from the Governor on the Board's CUI-initiated executive commutation-of-sentence request.[5] We apparently did not find that circumstance to be compellingly extraordinary last year, and I fail to see how it is suddenly a compellingly extraordinary circumstance now.

---

[5] In his "Suggestion for Reconsideration," Applicant's counsel explains that the false-evidence-at-punishment claim was "not included in the original [presumably the -05] Writ, as it was believed by both parties that the Governor's office would follow the clemency recommendation of the [B]oard of [P]ardons and [P]arole[s] rendering this issue moot for this Court." Suggestion for Reconsideration at 3. In recommending that this Court grant relief on Applicant's -07 writ application, the convicting court asserts that the Governor's refusal to follow the Board's recommendation constitutes a new fact that justifies Applicant's filing of yet *another* subsequent writ application under Article 11.07, Section 4(a)(1). TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(1). The Court today has implicitly rejected that recommendation in its unwritten order dismissing the -07 writ application, and so do I. The Governor's failure to follow the Board's commutation recommendation may have been a "new" event since the time that Applicant filed his -05 writ application, but it had no bearing on the availability, verity, cognizability, or credibility of Applicant's false-evidence-at-punishment claim. That Applicant's counsel did not include the claim in the -05 writ application is, frankly, bewildering, as it was more than readily "ascertainable through the exercise of reasonable diligence" as of the time the -05 writ application was filed. TEX. CODE CRIM. PROC. art. 11.07, § 4(c).

Section 4(a) of Article 11.07 plainly prohibits the courts from even addressing the merits of a claim unless it could not have been raised in an earlier application or it involves a federal constitutional violation that implicates the applicant's very culpability for the offense. TEX. CODE CRIM. PROC. art. 11.07, §§ 4(a)(1), 4(a)(2). By its dismissal of Applicant's -07 writ application today, the Court implicitly acknowledges that Applicant cannot satisfy those statutory criteria. Nevertheless, in the absence of any compelling justification for doing so, the Court pushes aside the statutorily imposed limitations on its authority to grant relief in subsequent writ applications by simply re-opening an earlier writ application—*one in which Applicant did not even timely raise the claim upon which the Court today grants relief*—and handing him a new punishment hearing.[6]

We are not a legislative body that can re-write the law at will to

---

[6] This Court has made it clear in the past that, even with respect to post-conviction applications for writ of habeas corpus that are prepared *pro se*, "as a court of law we may not create claims that the Court *sua sponte* believes meritorious when they are not arguably present in an applicant's pleadings." *Ex parte Carter*, 521 S.W.3d 344, 350 (Tex. Crim. App. 2017). Today the Court re-opens Applicant's -05 writ application and then resolves a claim in his favor that he did not even timely raise there.

The concurring opinion asserts that Applicant's current punishment-phase claim is essentially just a "subset" of the actual innocence claim he raised in his -05 writ application. Concurring Opinion at 2. Not so. An actual innocence claim does not necessarily depend upon false evidence. And a false-evidence-at-the-punishment-phase of trial does not depend on a showing that the defendant did not commit the underlying offense. If a defendant on direct appeal raised an argument that false evidence affected the guilt phase of his trial, but then he argued on rehearing that we failed to resolve his false-evidence-at-punishment claim, we would surely decline to grant rehearing, since he would not have presented the latter claim on original submission.

enact our own vision of justice. The Legislature has imposed limits on our authority to consider subsequent claims in habeas. We are not a governor with the executive power of clemency. The Governor denied Applicant's request for clemency. We are a court. As such, our authority is constrained by statutory and constitutional law. The Court's action with respect to Applicant's -05 writ application today fails, in my view, to reflect an appropriate regard for these principles.

If Applicant has a remedy in these circumstances, it is not in the Courts. At least as I view it, the Court's power has limits. Applicant's conviction is final. His habeas right, at least for the claim for which the Court proposes to grant relief, is exhausted.[7] It should have been, but was not, previously presented. The business of the courts is done.

It is the Governor to whom Applicant should address his arguments, again and again there, if he so desires.[8] That is where the Court should say his remedy, if there be one, properly resides. Instead, the Court here exercises power that the people did not give to it. No doubt the Court consoles itself in the belief that at least its heart is in the right place while it does so. But that does not ameliorate its error.

---

[7] Of course, other claims, if they meet the statutory gateway, might still be properly litigated. *See* TEX. CODE CRIM. PROC. art. 11.07 § 4.

[8] As in The Parable of the Persistent Widow, I know of no reason that Applicant cannot bring his case to the executive department again and again. Luke 18: 1-5. Perhaps, if we dismissed his claim as we should, the Board of Pardons and Paroles and the Governor may be persuaded to rescue him based on the same facts he has presented to us in his most recent application. Those in the executive department might also be persuaded, where they have not been in the past, if the courts first properly decided that they have not the power to afford a remedy. Unlike the judge in the parable, and the executive department of our government, our own judicial power to grant relief is constrained by the law.

I concur in the Court's determination to dismiss Applicant's -07 writ application. I dissent to the Court's actions with respect to his -05 writ application.

**FILED:**                  April 27, 2022
**PUBLISH**